GILLETT, Administrator, Appellant, vs. FLANNER-STEGER LAND & LUMBER COMPANY, Respondent.

*January 13—February 9, 1915.*

*Trial: Questions for jury: Master and servant: Death from falling tree: Negligence: Evidence: Sufficiency: Excessive damages: Appeal: Review: Failure to make proper motions.*

1. In submitting a case to the jury the trial court decides, as matter of law, that the evidence .will warrant findings in plaintiff's favor of the facts essential to a recovery.

2. In an action for death of a woodsman who, while engaged with others in opening up a logging road, was killed by a tree felled by another of the crew, findings of the jury to the effect that defendant was actionably negligent in permitting the work to be done as it was without the giving-of proper warnings are *held* to be sustained by the evidence, although the trial court ruled to the contrary.

3. An award of $4,625 for death of a workingman fifty-nine years old and capable of earning about $400 per year being deemed clearly excessive, although the question was not raised by defendant, this court, under sec. 2405*m*, Stats., remands the cause for a new trial unless plaintiff elects to take judgment for $3,000. SIE-BECKER and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

Action to recover compensation for the death of plaintiff's intestate. On the 1st day of November, 1912, the deceased with others, working under a foreman, was in the employ of defendant and engaged in opening up a logging road. All were experienced woodsmen. The particular trees to be removed had been blazed. The removal was being accomplished, mainly, by cutting the roots close to and under the surface of the ground. Each of several employees selected his particular working place. The direction of the wind was from east to west, causing the trees to fall west. One Sieck was working at the most westerly tree. The deceased was working at one some thirty-five or forty feet east of Sieck's tree. The underbrush had been cut away so the men were in sight of each other. Sieck's tree was a tamarack. The foreman depended on the men to watch out for themselves as regards being struck by falling trees, though they were admonished to be careful. As Sieck was about to finish his tree by cutting away a tap root the foreman came upon the scene. His being there was not for the purpose of giving warning of danger. It just happened that, in his rounds, he came there at the particular time. He took no special notice of Sieck's operation as he was finishing his tree. It commenced to fall rather prematurely and to the east, though Sieck's purpose

was to drop it the other way. There was evidence tending to prove that it took the unexpected direction and commenced to fall quicker than expected by reason of a sudden gust of wind from the west. As soon as the foreman observed what was about to happen, he called out the danger but too late for deceased to seek a place of safety. The tree fell toward him. He started to run. It overtook him causing his death. There was evidence to the effect, or tending to prove, that, where the men were at work sudden changes of wind were liable to occur. The prevailing direction on the particular occasion was from east to west and the cutting was being done so as to drop the trees accordingly. The particular tree was sixteen to twenty inches through and sixty to seventy-five feet high. The roadway was in a ravine. The ground raised up quite high to the right and left. There were changing gusts and puffs of wind occasionally. That was not unusual. Sieck commenced the finishing strokes with his ax without giving warning. One way to control the direction of a tree in such circumstances is to push it about as it is ready to fall. Another way is to cut the roots close on the side towards which it is desired to fall the tree. The proper manner of conducting operations was familiar. It was obvious that deceased was in a place of danger in case of the tree falling in his direction. Nothing by way of pushing the tree was done or giving warning, until the tree commenced to fall. No rule was promulgated in reference to falling trees, as aforesaid, though the men were charged to be careful. The conditions were all obviously favorable for sudden changes of the wind, and trees falling in a different direction than was calculated on. It was difficult to calculate, with reasonable certainty, as to the direction any tree would fall unless some manual force was applied thereto. Danger could readily have been obviated by pushing or by not allowing one man to work within range of a tree another was engaged in dropping. It is customary, in such circumstances, for the man who is dropping a tree to give warning when it is about to fall.

The court submitted the cause to the jury, resulting in these findings of fact: Defendant was negligent in permitting the work to be done as it was performed. A man of ordinary care ought reasonably to have apprehended danger of injuring workingmen. Such negligence was the proximate cause of the accident. It was negligence to permit the work to be done without requiring men to push the trees in the direction they were desired to fall. A man of ordinary intelligence ought reasonably to have apprehended that such was necessary to avoid danger of injuring workmen. Failure to do that was a proximate cause of the accident. Sieck was negligent, in cutting the tree as he did, without giving warning to men in the vicinity. A man of ordinary intelligence ought reasonably to have apprehended it was dangerous to workmen in the vicinity to do so. Such negligence was a proximate cause of the accident. The foreman was negligent in not giving reasonable warning of the imminence of the fall of the tree and his failure to do so was a proximate cause of the accident. The deceased was not guilty of contributory negligence.

Before submitting the cause to the jury the court intimated that he did not think a cause of action was established. That was not in the presence of the jury. After verdict, on the motion for change of answers, the court stated that before submitting the cause to the jury he was of the opinion that plaintiff had failed to make out a cause of action, but thought he would take the verdict of the jury and then act upon it, in case of its not being what he thought it should be; that in his opinion the answers to all the questions convicting defendant of actionable negligence, were contrary to the evidence. He therefore changed such answers so as to favor defendant, and ordered judgment dismissing the complaint · with costs. Judgment was so rendered.

For the appellant there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief signed by *Robert R.*

*Freeman,* attorney, and *Henry J. Bendinger* and *Timothy Brown,* of counsel, and oral argument by *Mr. Freeman.*

MARSHALL, J.   The court in submitting the cause to the jury, decided that there was room in the evidence to find the facts as they were found.   Whether there was such room or not was a question of law.   It was for the court to decide that before calling upon the jury to determine, as matters of fact, between conflicting inferences.   With the judgment of the court for their guidance, it was most natural for the jury to take, as a verity, that there was room in the evidence for plaintiff to recover.   They did so and rendered an honest and reasonable verdict, if the court gave the proper decision as to the law.   They, naturally and properly, apprehended there was evidence warranting a finding either way.   Whether the court decided at last, that there was no reasonable basis for the jury's verdict, in any reasonable view of the evidence, does not clearly appear.

On the whole, the decision of the trial judge does not possess the persuasiveness ordinarily to be accorded to a consistent and positive determination that the evidence does not, in any reasonable view, support the jury's determination. Therefore, it seems that there is little, if anything, in the court's decision below to impeach the verdict.   So we incline to the view that there was a case for the jury, as the trial court, so far as they could have understood the matter, deliberately decided, and that judgment should have been rendered accordingly.

Whether the verdict was excessive or not, because of the course the case took, was not passed upon.   Deceased was a common workingman.   He was capable of earning about $400 per year.   He was fifty-nine years of age.   The recovery could not, properly, go beyond the reasonable expectation of pecuniary benefit from his life which the wife was deprived of by his untimely taking away.   A recovery, in such

a case, under the Workmen's Compensation Law would be about $1,600. Assuming that the earnings which would have gone to the wife each year during her husband's expectancy of life, would have been $250 per year, which would be quite a large estimate, $2,775, at the time of the trial, would have been a full equivalent, based on what it would have taken to purchase an annuity for her of $250 per year during such expectancy. His total earnings, had he lived, would not have exceeded $5,518, and the present worth would not exceed $2,500. Four thousand six hundred and twenty-five dollars for damages to the wife is clearly excessive; but there was no motion to set aside the verdict on that ground, nor for a new trial because it was contrary to the evidence. On the record, defendant made no complaint except as to the findings on the subject of negligence. If it were not for sec. 2405m, Stats., there would be no way, under established practice, to remedy the difficulty. It is probable, counsel for plaintiff were misled by the circuit judge into supposing that there was practical certainty of relief from the verdict by motion to set aside answers as to negligence and so the ordinary motions to reach excessiveness in the verdict were omitted. The confidence as to the trial court was not misplaced, and now respondent is left in a very poor predicament, unless relief can be accorded under the beneficent law referred to.

The statute provides that the court, for the purpose of preventing a miscarriage of justice, may control the situation regardless of inadvertences or mistakes or misjudgments of the court or counsel, and may, regardless of whether proper motions, objections, or exceptions were taken or not, in case of a reversal, direct the proper judgment, or remand the cause for a new trial as shall be deemed necessary to accomplish the ends of justice. In view of that, it is considered that we ought, instead of remanding the case for judgment on the verdict as rendered, send it back with permission to the plaintiff to elect, within twenty days after the filing of the *remitti-*

*tur* in the trial court to take judgment for $3,000 and costs, or a new trial on the question of damages only.

*By the Court.*—The judgment is reversed, and the cause remanded with directions as indicated in the opinion.

SIEBECKER and KERWIN, JJ., dissent from so much of the judgment as holds that the damages are excessive.