VANNATTA, Appellant, vs. LANCASTER LIGHT & POWER COMPANY, Respondent.

*October 27—November 14, 1916.*

*Trial: Questions for jury: Changing findings: Negligence: Death: Contributory negligence: Electric wires: Height: Crossing over highway bridge: Statute construed.*

1. The submission of the issues for special verdict is in this case *held* entitled to little weight as a decision by the trial court that conflicting inferences might be drawn from the evidence, that court having thereafter changed or set aside the jury's findings that defendant was negligent and plaintiff free from contributory negligence and having clearly stated in a written opinion that such findings were unwarranted because the undisputed facts established the contrary as a matter of law.

2. The side trusses of an iron highway bridge rose to the height of sixteen feet above the floor and were fastened together at the top by cross-beams and braces, so that nothing over sixteen feet high could pass over the bridge.    High tension electric wires of the defendant light and power company crossed diagonally above said bridge near one end, one of such wires being attached to a pole on each side of the bridge at a height of twenty-nine feet three inches above the ground, and being at the point in

• question six feet two inches above the top of the bridge and thirty-two feet above the ground beneath the bridge. Plaintiff's son, eighteen years old and nearly six feet tall, climbed to the top of one of the trusses and in some way came in contact with, or within two inches of, said wire and was killed. Upon evidence showing the above, among other facts, it is *held*, as matter of law, that defendant was not negligent in so constructing its lines, and that the deceased was guilty of contributory negligence.

3. Sub. 2, sec. 1329a, Stats. 1915,—providing that all such wires shall not be less than twenty-four feet above the ground at all crossings and not less than fourteen feet above the ground at all other places,—did not apply to the defendant in the construction of its line over the bridge in question.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action to recover damages for the death of plaintiff's son caused by his coming into contact with a high tension electric wire of the defendant company.

The circuit judge fully states the facts of the case in his written decision upon defendant's motion to change the answers of the jury to the second, third, fourth, and fifth questions, as follows:

"The plaintiff was the mother of Iris Clifford Vannatta, who was killed on August 13, 1915, while on the iron highway bridge that crosses Little Platte river about half a mile north of the city of Platteville, by a discharge of electricity from a transmitting wire of the defendant that diagonally crossed above said bridge near its northern end. . . . At the close of the plaintiff's testimony the defendant's attorneys moved the court to direct a nonsuit. This motion was overruled. At the close of the testimony a motion was made by the defendant's attorneys to direct a verdict for the defendant. This was likewise overruled and questions for a special verdict were submitted to the jury, . . .

"The special verdict was in substance as follows: (1) That Iris Clifford Vannatta came to his death while he was on the top of a sixteen-feet high truss of said bridge through a charge of electricity from a live wire of the defendant com-

pany that diagonally crossed said bridge about twenty-two
feet above the floor of the bridge and over six feet above the
top of said truss; (2) that defendant was negligent in so con-
structing its wires over this bridge; (3) that the manager of
the defendant company, as a man of ordinary care and ex-
perience in the erection of poles and wires for carrying elec-
tricity, ought reasonably to have foreseen, under the attend-
ing circumstances, that as a natural and probable consequence
of so carrying said wires over this bridge injury might oc-
cur to a person on the bridge who was using ordinary care
for his own safety; (4) that no want of ordinary care on the
part of the deceased contributed to produce his death;
(5) that the plaintiff was entitled to receive $4,000 for the
death of her son. . . .

"This case was remarkable in this: that there was no ma-
terial conflict in the evidence. The undisputed facts of the
case are as follows: The plaintiff at the time of Clifford Van-
natta's death was sixty-eight years old. ·Clifford at that time
was eighteen years of age and nearly six feet tall. He was
her youngest child and lived with her. She received his
earnings and supported him. He had no special employ-
ment, but worked at various jobs. He received for his work
$2 a day. The plaintiff had seven other children—all of
them married. At the time of this unfortunate accident she
was visiting with one of them in Dakota.

"The bridge in question on the Platteville and Lancaster
highway is constructed wholly of iron, excepting the floor of
the bridge, which is of wood. It is ninety feet long and four-
teen feet wide. The iron trusses at the sides rise to the
height of sixteen feet from the floor of the bridge. In each
truss there are iron uprights rising from the bottom of the
bridge sixteen feet to the flat top of the truss. These up-
rights are made of iron beams sixteen feet long, connected
together with lattice-work irons, the uprights being eight
inches in diameter. The two trusses are fastened together
at the top with cross-beams and truss rods; also by cross-
braces or rods three quarters of an inch in diameter which go
diagonally from the top of one truss to the top of the other.
The highway is made to slant up to each end of the bridge.

"The defendant company receives its electricity for light-
ing and power from a generating plant at Galena, conducted
through the city of Platteville, which also receives its elec-

tricity from the same source. The defendant was authorized to use the public highway from Platteville to Lancaster by the towns through which the highway runs for the purpose of setting poles for the attachment of its wires for transmitting electricity. The work of constructing this line was finished late in 1914 and the current then began to pass over it. The poles used were of Idaho cedar, thirty-five feet long and were set 175 feet apart. Three lines were strung on them, which were known as the top bow wire, the arrow wire, and the bottom bow wire. The three, in the order named, were strung above ground at the height of thirty-one feet six inches, twenty-nine feet three inches, and twenty-seven feet three inches. These wires crossed diagonally above the north end of said bridge. The arrow wire was nearly directly above the north upright of the east truss and six feet two inches above the truss. There was no water in the bed of the stream below this upright—only dry ground. The distance at this point from the arrow wire to the floor of the bridge was twenty-two feet two inches, and to the ground below the bridge was thirty-two feet.

"The deceased was killed by an electric discharge from the arrow wire when he was at the top of the east truss at the place of the said north upright. He with Lloyd Hubler, aged twenty-two years, and Blanch Bell and Violet Coldwell, two young ladies about seventeen years of age, started from Platteville in a single-seated automobile to take a ride on the Lancaster road. When they got upon this bridge Clifford asked them to stop and look at the fish. They stopped the car upon the bridge and he got out, the others remaining in the auto. He started to climb up said upright by the zigzag cross-irons. The other three asked him to desist as he might fall into the water. He replied that there was no danger, for when a boy he had climbed the bridge many times. When he got to the top of the truss he leaned over it with his face toward the river. He then called to them 'Here comes a fish,' or 'Look, here comes a fish.' They all looked to the river to see the fish, and presently 'there was a flash and fire jumped from all parts of the bridge' and there was a roar. They all looked up and saw Clifford falling feet foremost to the floor of the bridge. Hubler rushed to him and found that he was dead.

"The foregoing is the substance of the testimony of the

three eye-witnesses to the tragedy as to how it occurred. None of them spoke of receiving any electric shock. Edward Bennett, professor of electric engineering at the University and a person of wide experience in electrical affairs, was a witness for the defendant, and had been to this bridge and had observed it and the three wires that cross it. He had climbed the same upright that the deceased did and had assumed the same position at the same place that the deceased occupied when he was last seen alive, and suffered no injury or shock from any of the wires. It was in proof that the current transmitted over these wires was 33,000 volts. Mr. Bennett testified that a current of that potency would not leave the conducting wire for any object, not even a copper point, unless such object came as near to the wire as two inches. This assertion stands in the testimony unquestioned. It was also in evidence and undisputed that this iron bridge, grounded as it is at both ends, is an excellent conductor, and that with the many iron bars and rods crossing it at the top, if the conducting wire over the bridge should break and the ends fall upon the bridge the electricity would be carried by the iron work to the ground and no injury happen to a traveler on the bridge."

The circuit court denied plaintiff's motion for judgment upon the verdict and ordered that the answers of the jury to the second, third, fourth, and fifth questions of the special verdict be set aside because they are wholly unsupported by the evidence. Judgment was entered in favor of the defendant dismissing plaintiff's complaint and that the defendant have and recover costs and disbursements of the action. From such judgment this appeal is taken.

For the appellant there were briefs by *J. W. Murphy* and *Kopp & Brunckhorst,* and oral argument by *Mr. Murphy.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Howard T. Foulkes,* of counsel, and oral argument by *Mr. Foulkes.*

SIEBECKER, J. It is argued that the action of the court in submitting the issues to the jury for determination by special verdict was a ruling to the effect that the evidence permitted

of conflicting inferences and required determination thereof
by a jury. The record, however, shows that the trial court
expressed the opinion; in ruling on defendant's motion to
change the jury's answers of the special verdict and for judg-
ment in its favor, that the evidentiary facts in the case are
without dispute and establish as a matter of law that the de-
fendant's officers and agents were not negligent in the con-
struction and operation of the electric lighting plant and that
the decedent was guilty of contributory negligence. In the
light of this holding of the court the views expressed by this
court in the case of *Gillett v. Flanner-Steger L. & L. Co.* 159
Wis. 578, 150 N. W. 987, as to the weight to be given to the
decision of the trial court upon issues of fact in trials to a
jury, are against plaintiff's contention. The trial court
clearly held that there was no room in the evidence to per-
mit the jury to find that the defendant was negligent or that
the decedent was free from contributory negligence.

The trial court's decision on the questions of defendant's
negligence and decedent's contributory negligence is helpful
and persuasive on these points. In his consideration of the
evidence on the jury's finding that defendant was negligent
he declares:

"This, as applied to the facts in this case, was a finding
that the person charged with the work of constructing this
electrical lighting line ought, as a reasonable person, to have
foreseen that a young man in a daring mood might climb to
the top of a sixteen-foot truss and then in some way to come
in contact with the electric wire that was six feet two inches
above the truss. Bridges are built by the towns and cities
to travel on, not as places upon which to perform venturesome
feats. The question that should properly have been in the
mind of the constructor of the electrical line was: Will any
one of the traveling public be at all likely to suffer injury
from the electric line as I am constructing it. Evidently
with that thought in his mind the work was so done that no
traveler upon the bridge could be injured because of the way
the wires were strung.

"By their answer to the fourth question the jury found

that no want of ordinary care upon the part of the deceased contributed to produce his death. This finding under the undisputed facts in this case is an astonishing one—that is a better way to speak of it than to say that it is absurd. His companions who remained in the auto protested against this climbing up to the top of the truss, for fear that he might fall into the water, but he proceeded. He evidently enjoyed showing his fearlessness and in startling the girls. When he was leaning over the top of the truss looking at the water and called out to them 'Here comes a fish' when there was no fish, he had an object in doing so. Was it to divert their attention so that he might change his position and when they looked up again still more startle them by being seen standing on the top of the truss? This is not an unreasonable supposition, for it is certain some part of his body either touched the arrow wire or came within two inches of it."

The court held that the provision of sub. 2, sec. 1329a, Stats., did not apply to defendant in the construction of its wires over the bridge. The statute reads: ". . . and all wires strung upon such poles shall be not less than twenty-four feet above the ground at all crossings and not less than fourteen feet above the ground at all other places." The court held:

"They claim that the defendant violated the law because the arrow wire was only twenty-two feet two inches above the floor of the bridge and not twenty-four feet as they asserted the law required it should be at this place. Why was a height of fourteen feet above the ground deemed sufficient for electric wires except at highway crossings? Obviously because it might be that something of considerable height might be conveyed along a highway, and for the prevention of injury from contact with the wires it was thought wise to increase the height of the wires at the crossings of a highway by ten feet. But the reason for a height of twenty-four feet does not apply to a bridge so constructed by the tying together of its side trusses at their tops that nothing can be conveyed over it that will reach up over sixteen feet. It is also to be considered that the arrow wire was attached to the poles on each side of the bridge at a height of twenty-nine feet three inches from the ground, and it is a fact that this wire

at the place where the electrical discharge took place was thirty-two feet above the ground beneath it."

It is considered that the trial court properly held that the provisions of this statute do not apply to the defendant in the construction of its line over the bridge under the facts and circumstances shown. We are of the opinion that the judgment of the trial court dismissing plaintiff's complaint is correct.

*By the Court.*—The judgment appealed from is affirmed.