Meyer, Administratrix, Respondent, vs. Menominee and Marinette Light and Traction Company, Appellant.

*October 11—December 10, 1912.*

*Negligence: Electric lighting wires: Location and condition: Death of boy: Licensee or trespasser: Liability of lighting company.*

A boy about fourteen years old, while upon the top of a lumber pile, took hold of defendant's electric lighting wires and was killed. The lumber pile had for a year stood adjacent to a much traveled private road through a lumber yard, was about twenty-four feet high and was easy of access by children, steps to the top of the pile being formed by projecting boards. For many years lumber had been piled to about the same height at that place, and some fifty children living near by were accustomed to play upon the piles. The wires, which were strung upon poles along the side of the road, passed over the pile in question twenty-one inches above its top. There was evidence that they were very slack, sagging much more than is customary; that where they passed over the pile the insulation was worn or rotted off; that defendant had been notified and warned of the condition of the wires and poles about eight months before the accident; and that it knew or ought to

have known that children were likely to be upon the lumber pile. *Held*, that the jury were warranted in finding that defendant was negligent in the use of its wires so placed and strung, and that it ought reasonably to have anticipated that some child would be injured thereby; and, there having been no contributory negligence on the part of the deceased or his parents, a recovery was properly had against the defendant, although the boy was a bare licensee or invitee upon the lumber pile.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought to recover damages for the death of a boy about fourteen years of age who came in contact with the highly charged wires of the defendant. The accident occurred on what is known as Hamilton and Merryman Company Island in the city of Marinette, where the Republic Lumber Company as lessee was engaged in the lumber business. The defendant's wires extended across a lumber pile where the boy was at the time he came in contact with the wires.

The negligence charged, in substance, is that the defendant disregarded its duties in many respects, and among others that it negligently erected poles and strung electric wires upon poles which were so short that the electric wires carrying high voltage and deadly and dangerous electric currents were but twenty-six feet three inches above the ground at the point where the same passed over the lumber pile in question, and failed and neglected to inspect said wires, poles, and fastenings, and failed to keep the wires, poles, and fastenings in repair, and negligently and carelessly permitted the wires to become slack and sag down, and permitted the insulation on said wires to become rotten and worn off, and suffered said wires to become so slack and so sagged down as to be but one foot nine inches above the top of the lumber pile in question, and that said poles were set 169 feet apart at the place in question; that the poles by the exercise of ordinary care could

have been erected so that the wires would have remained at least seven feet or more above the top of the lumber pile.

The jury returned the following verdict:

"(1) Was said Francis Meyer, deceased, killed by a shock received from one of the defendant's electric light wires, which he took hold of while on the top of a lumber pile? *A.* Yes (by court).

"(2) Was said wire as then charged, placed and strung dangerous to children being on top of said pile? *A.* Yes.

"(3) Was said defendant negligent in using said wire so charged, placed and strung at the time and place of the death of said deceased? *A.* Yes.

"(4) Ought the defendant, in the exercise of ordinary care, to have reasonably anticipated that by using said wire, so charged, placed and strung, some child would be injured thereby? *A.* Yes.

These three questions require no answers if you should answer the second question "Yes."

"(5) If you should answer the second question 'No,' then answer this: Was said death caused by any defect in the condition of the insulation of said wire, at the place where the deceased took hold of it? *A.* ——.

"(6) If you should answer the fifth question 'Yes,' then answer this: Was the defendant negligent in using said wire at that place with such defective insulation? *A.* ——.

"(7) If you should answer the sixth question 'Yes,' then answer this: Ought the defendant, in the exercise of ordinary care, to have reasonably anticipated that by using said wire with such defective insulation it would cause some child to be injured thereby? *A.* ——.

"(8) Was said deceased Francis Meyer guilty of any want of ordinary care which contributed to his injury and death? *A.* No.

"(9) Was Joseph Meyer, the father of said deceased, guilty of any want of ordinary care which contributed to the injury and death of said Francis Meyer? *A.* No.

"(10) Was the mother of said Francis Meyer, deceased, guilty of any want of ordinary care which contributed to the injury and death of said Francis? *A.* No.

"(11) At what amount do you assess the damage of the plaintiff father and mother resulting from the death of their said son, Francis?    A. $1,500."

The usual motions were made by the defendant to change the answers of the jury to questions in the special verdict, for judgment upon the verdict as changed, and for a new trial, which were denied, and judgment entered for the plaintiff upon the verdict, and the defendant appealed.

The cause was submitted for the appellant on the brief of *E. W. Miller,* attorney, and *F. J. Trudell,* of counsel, and for the respondent on that of *E. C. Eastman.*

On behalf of appellant the following, among other cases, were cited: *Cahill v. Layton,* 57 Wis. 600, 16 N. W. 1; *Hector v. Boston E. L. Co.* 161 Mass. 588, 37 N. E. 773; *Sheffield Co. v. Morton,* 161 Ala. 153, 49 South. 772; *Freeman v. Brooklyn Heights R. Co.* 54 App. Div. 596, 66 N. Y. Supp. 1052; *McCaughna v. Owosso & C. E. Co.* 129 Mich. 407, 89 N. W. 73; *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Stark v. Muskegon T. & L. Co.* 141 Mich. 575, 104 N. W. 1100; *Keefe v. Narragansett E. L. Co.* 21 R. I. 575, 43 Atl. 542; *Rodgers' Adm'r v. Union L., H. & P. Co.* (Ky.) 123 S. W. 293; *Commonwealth E. Co. v. Melville,* 210 Ill. 70, 70 N. E. 1052, 1055; *Greenville v. Pitts,* 102 Tex. 1, 107 S. W. 50, 14 L. R. A. N. s. 979; *Mayfield W. & L. Co. v. Webb,* 129 Ky. 395, 111 S. W. 712, 18 L. R. A. N. s. 179; *Cumberland T. & T. Co. v. Martin's Adm'r,* 116 Ky. 554, 76 S. W. 394, 63 L. R. A. 469.

KERWIN, J.    The only question presented on this appeal is whether there is sufficient evidence to support the verdict.    It was established upon the trial that the Hamilton and Merryman Company and the Republic Lumber Company, its lessee, had for many years carried on a sawmill and lumber manufacturing business on what is known as Hamilton and Merryman Company Island, in the city of Marinette; that tram-

ways were constructed leading from the sawmill to distant portions of the lumber yard upon which lumber was hauled and placed in piles adjacent to said tramways; that said tramways were from thirteen to fourteen feet high; that the lumber piles were from twenty-four to twenty-six feet high; that the lumber pile in question was erected one year before the death of Francis Meyer and was twenty-four feet six inches high, and that lumber had been piled to the height of about twenty-four feet six inches at this point for some ten years previous to the death of said Meyer; that electric light wires of defendant had been strung upon poles in the lumber yard for nine or ten years prior to the accident; that the wires crossing this lumber pile were attached to a pole eighty-eight feet east of the pile thirty-six feet above the ground, and to a pole eighty-one feet west of the pile twenty-three feet above the ground, making a span of 169 feet, and the wires were so loose and sagged as to be only one foot nine inches above the top of the lumber pile.    There was also credible evidence that the wires were very slack and should have been tighter, that the span of 169 feet between the poles allowed a greater sag than is ordinarily and customarily allowed in stretching electric wires of that character, and that the insulation was worn or rotted off from the wires where they passed over the lumber pile in question.    The evidence further shows that a great many children had been in and about this lumber yard for many years before the accident, and that about fifty children ranging in ages from six to fifteen years lived with their parents in and about this lumber yard at the time of the death of said Francis Meyer, and that such children were accustomed to play about and upon the tramways and lumber piles, including the pile in question; that deceased lived with his parents about ninety feet from the lumber pile in question; that a plank road some sixteen feet wide ran through a portion of the leased premises and was used by the lumber company in conveying lumber from its mill, and the lumber was piled on

either side of said road; that the two wires in question were about twenty-eight inches apart and each carried 2,300 voltage; that this plank road, while not a duly laid out street, was traveled by a great many people aside from the employees of the lumber company, and the poles and wires were erected along the south side of this road; that the lumber pile in question was immediately adjacent to this road and easy of access by children, there being steps on the side of the pile by boards protruding close to the plank road and extending to the top of the pile; that defendant was notified and warned as to the condition of the wires and poles in September, 1909, the fall before the death of Francis Meyer, which death occurred in May, 1910.

The main contention of counsel for appellant, as we understand it, is that the defendant owed deceased no duty, he being a mere trespasser, and further that the element of reasonable anticipation necessary to make a case of actionable negligence was wanting, hence there could be no recovery.   The deceased was on top of the lumber pile, took hold of the wires, one in each hand, and was instantly killed.   Counsel for appellant say they have found no case "where recovery was had by reason of the taking hold of electric wires."    *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 132 N. W. 623, is directly against appellant upon this proposition.

Counsel for appellant rely mainly upon adjudications from foreign jurisdictions.   While it may be difficult to reconcile all decisions upon the subject, the confusion, or seeming confusion, results more from failure to fully appreciate the distinction upon facts than from any conflict in propositions of law upon the same state of facts.   This we think will appear obvious from an examination of the cases cited by appellant from other jurisdictions.   Cases may be found where one cannot recover for injuries sustained while trespassing, while others may be found holding that the mere fact that plaintiff was trespassing on the defendant's property when injured will

not in all cases bar recovery. So, too, it has been held that a bare licensee or invitee may recover for injuries sustained while on the defendant's premises caused by the defendant's negligence. In *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219, plaintiff, a child, was injured while playing upon a lumber pile situate on the highway adjacent to defendant's premises, yet it was held that recovery could be had for the injuries sustained through the negligence of the defendant. See, also, *Connell v. Keokuk E. R. & P. Co.* 131 Iowa, 622, 109 N. W. 177. But whether deceased in the instant case was a bare licensee or invitee when upon the lumber pile, if defendant knew or ought to have known that boys of his age were accustomed to be there, it was chargeable with due care in the management of its poles, wires, and current so as to protect children and others who might be expected to be there from injury, and was bound to anticipate that some injury might result to some one in consequence of the location and condition of the wires. *Nagle v. Hake,* 123 Wis. 256, 101 N. W. 409; *Wilbert v. Sheboygan L., P. & R. Co.* 129 Wis. 1, 106 N. W. 1058; *Lomoe v. Superior W., L. & P. Co., supra; Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418; *Burnett v. Ft. Worth L. & P. Co.* (Tex. Civ. App.) 117 S. W. 175; *Temple v. McComb City E. L. & P. Co.* 89 Miss. 1, 42 South. 874, 11 L. R. A. N. s. 449; *Powers v. Harlow,* 53 Mich. 507, 19 N. W. 257; *Connell v. Keokuk E. R. & P. Co.* 131 Iowa, 622, 109 N. W. 177; *Daltry v. Media E. L., H. & P. Co.* 208 Pa. St. 403, 57 Atl. 833; *Ambroz v. Cedar Rapids E. L. & P. Co.* 131 Iowa, 336, 108 N. W. 540; *Braun v. Buffalo G. E. Co.* 200 N. Y. 484, 94 N. E. 209; *Quinn v. Delaware & A. T. & T. Co.* 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. N. s. 988.

In the case at bar the evidence was ample to warrant the jury in finding that for a long time before the accident the defendant knew, or ought to have known, that children were likely to be upon the lumber pile and be injured by contact with the wires, and that defendant was guilty of negligence in

the use of its wires at the time and place of the death of the deceased. There is also sufficient evidence to entitle the jury to find that neither the deceased nor his parents were guilty of contributory negligence. In many of the cases cited by appellant's counsel the danger was not reasonably to be apprehended, and most if not all of them are readily distinguishable from the case at bar. It would serve no useful purpose to discuss them. Perhaps one of the strongest cases cited in support of appellant's contention is *Cumberland T. & T. Co. v. Martin,* 116 Ky. 554, 76 S. W. 394, 63 L. R. A. 469, decided in 1903; and this case is out of harmony with a later decision of the same court, *Rodgers' Adm'r v. Union L., H. & P. Co.* (Ky.) 123 S. W. 293, decided in 1909.

There are no exceptions to the charge or objection to the special verdict, and no request was made for further findings. We think the judgment of the court below is right and should be affirmed.

*By the Court.*—The judgment is affirmed.