## ·CHARLESTON. ·

GEORGE LOVE, *Adm'r,* v.VIRGINIAN POWER COMPANY.

Submitted April 14, 1920.    Decided May 4, 1920.

1. PLEADING—*Preceding Declarations not Referred to in Amended Declaration Considered as Abandoned.*

Where an amended declaration, complete in itself, does not refer to or in any manner adopt or make preceding declarations parts of it, the latter will be considered and treated as withdrawn and abandoned. (p. 394).

2. ELECTRICITY—*Company Maintaining Highly Charged Wires in Exposed Place Must Make Them Safe as to Persons Lawfully Near Them.*

A company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means. (p. 394).

3. SAME—*Declaration for Death of Child from Uninsulated Wires Held to State a Cause of Action.*

A declaration alleging that defendant, for a period of two years or more, permitted its uninsulated high-power transmission cables, carrying a current of dangerous voltage, to remain within four feet of the top of a pile of slate, slag or other refuse from a nearby coal mine, lawfully placed there subsequent to the erection of the cables by the owner or lessee of the tract over which they passed, when defendant knew or should have known that children of miners living in that neighborhood had long been accustomed to play on the pile, but made no effort to safeguard and protect them by the insulation, elevation or removal of its lines to another portion of the tract, as a result of which failure plaintiff's intestate, a child of tender years, was killed, states a cause of action. (p. 397).

(LYNCH, JUDGE, absent).

Action by George Love, administrator, etc., against the Virginian Power Company. Demurrers to original and amended declaration sustained and rulings certified.

*Reversed, demurrer overruled.*

86 W. Va.

*George Love,* for plaintiff.
*Osenton & Lee,* and *Payne, Minor & Bouchelle,* for defendant.

LYNCH, JUDGE:

There are in the record an original and two amended declarations, demurrers to each of which the court sustained and certified its rulings here to test their correctness. As the pleadings do not in any manner or for any purpose refer to or make the preceding ones parts thereof, only the last can be considered upon this review, according to the principles established by *Roderick* v. *Railroad Co.,* 7 W. Va. 54; *Bartley* v. *Western Maryland Ry. Co.,* 81 W. Va. 795; *Kinder* v. *Boomer Coal & Coke Co.,* 82 W. Va. 32; *Shafer* v. *Security Trust Co.,* 82 W. Va. 618; *Roberts* v. *United Fuel Gas Co.,* 84 W. Va. 368, 99 S. E. 549, 550.

Besides the defendant Virginian Power Company, the Sunday Creek Company is interested in the result of the action only indirectly, if at all, as defendant's lessor. The latter in turn is lessee of the Kanawha & Hocking Coal & Coke Company, the owner of the land where the accident fatal to plaintiff's intestate occurred, thereby making defendant sublessee of that company. The authority conferred upon the Virginian Power Company by its lessor was the right to construct, maintain and operate in the usual manner a system of electric wires or combination of wires over and upon the strip of land leased to it for a right of way, part of a large boundary operated by the Sunday Creek Company under its lease from the Kanawha & Hocking Coal & Coke Company, in subordination, however, to the reserved right of the Sunday Creek Company to use and enjoy the strip as and whenever necessary in the exercise of its right to mine, remove and market the coal contained in the entire tract.

The source from which defendant supplies the current of electricity is its plant located at Cabin Creek Junction in Kanawha County, and from that point as a generating center it distributes the current to its consumers and patrons by high-power transmission cables, and for that purpose occupies the portion of the land leased to it, and especially that part thereof near the village of Harewood in Fayette County, where the

mother of decedent and the decedent also resided on the date of his death, and where the Kanawha & Hocking Coal & Coke Company or its lessee, the Sunday Creek Company, conducted mining operations through a nearby mine opening. The slate, slag and other refuse usually and inevitably incident to such operation the latter company hauled and dumped under defendant's wires near Harewood in such quantity and to such an extent that eventually, plaintiff avers, there were but four feet between the surface so elevated and the wires. This condition continued during a period of two years prior to the accident complained of, but for which accumulation it probably would not have occurred, as defendant's wires appear to have been constructed properly in the first instance and at a safe distance above the ground.

The cause of action averred in the second amended declaration is comprehended in the following additional facts, the truth of which, if well pleaded, defendant by the demurrer admits, and what is said heretofore and what may be said hereafter is based upon that concession, and of course not otherwise: For a period of at least two years immediately preceding the accident defendant knew, or was possessed of such source of information that it should have known, of the nearness of the surface of the accumulated slate or refuse pile to its uninsulated and highly charged electric wires; the habit or custom of the community children, including decedent, to assemble for play and amusement upon and about the slag dump unhindered by inclosures of any sort; and the probability of contact by them with the wires at that point; and with this notice or means of knowledge of the danger to them negligently failed to perform its duty toward decedent, and did nothing to prevent such accident; whereby and by reason whereof plaintiff's intestate, a child seven years of age, while playing on the pile received the injury from which his death ensued. Decedent's father, an employee and tenant of the coal company owning or operating the tract, together with his family, occupied a house thereon near the slag pile until his death by mine accident a short time prior to the fatal injury with which we are concerned, and after his death his widow and son, the

decedent, continued to occupy the building rent free with the company's permission.

If plaintiff can by competent and adequate proof establish the truth of the facts averred and now admitted to be true, when traversed by a plea and denied by testimony to the contrary, are they such as legally justify the recovery sought by this action? If to that question the law warrants an affirmative answer, the ruling on the demurrer to the second amended declaration is erroneous; otherwise it is right.

Though useful in many ways and for various purposes indispensable in these days of varied activities, the force called electricity is an instrumentality of a highly dangerous character, and if not properly confined in its place, it may maim or ruthlessly destroy life and property. Although generally serviceable and capable of beneficial use when properly insulated and controlled, yet when defectively insulated or carelessly employed, the current resembles the legendary thunderbolts of mythical deities, destroying all who cross its path. The more inherently powerful an instrumentality, the greater the duty to exercise a commensurably high degree of diligence and care to prevent danger from its employment in the varying phases of business activities to which it is adapted and applied. Whenever and by whatever mode or method any dangerous agency is handled, the one responsible therefor is necessarily and legally bound to the highest measure of skill and care in dealing with it, to the end that the lives and the property of others without fault may not be injured or destroyed by contact with it.

Defendant had a lawful right to construct and maintain its wires over the property in question, a right conferred by a valid lease. At the time of erection their distance above the ground was apparently sufficient to remove all danger of contact with those traveling in that vicinity. But the lease agreement granting to defendant the strip or right of way over the property and giving it authority to keep the same free from obstructions, specifically makes defendant's rights therein subordinate to those of the lessor and reserves to the latter the right to utilize the strip whenever necessary to the efficient and effective operation of its mining plant. It was pursuant to this provision that the

coal company deposited the slate and slag under defendant's wires, continuing to do so until the top of the pile was not more than four feet below the uninsulated transmission cables carrying an electric current of 45,000 volts. Decedent lived nearby with his mother in a company house and, according to the averments, frequently over a period of two years played with his associates upon the pile, a fact known to defendant or of such continuity over a considerable period of time as to create a presumption of knowledge. Did defendant under the circumstances owe to decedent the duty to insulate its wires, or elevate them, or move them from the pile, as the agreement with its lessor apparently authorized, in order to avoid risk of injury to those known to frequent such place for play? If such duty existed, the ruling of the court below sustaining the demurrer to the second amended declaration was erroneous.

A company maintaining electric lines over which a current of high voltage is carried is bound to exercise the necessary care and prudence to prevent injury at places where others have the right to go either for work, business or pleasure. *Thomas* v. *Electrical Co.*, 54 W. Va. 395; *Thornburg* v. *Railroad Co.*, 65 W. Va., 379; *Humphreys* v. *Raleigh Coal & Coke Co.*, 73 W. Va. 495; 1 Joyce on Electric Law (2d Ed.), § 445; Keasbey on Electric Wires (2d Ed.), § 247 et seq. We cannot say as a matter of law that decedent had no right to be upon the pile of slag where he received his injury. By the permission of ·the coal company owning or leasing the entire tract he and his mother, after his father's accidental death in the mine, continued to occupy rent free the house in which they had been living. Their presence upon the property therefore was not unlawful. The agreement whereby defendant acquired right of way for its transmission line bound it to recognize the paramount rights of the coal company, its lessor, and thereby charged it with the duty not to ignore the presence of those in the employ of the latter or lawfully upon its premises who might in passing to and fro cross or otherwise enter upon the strip over which the cables were strung. The relation in which they and their children stand toward defendant while upon its right of way is therefore of a higher and different nature than that of trespasser or bare

licensee. Their employment necessitates the occasional, perhaps frequent, passage and repassage over the strip, and the presence of their children carries with it the implication of reasonable freedom for play. The presence of these persons, both adults and minors, was a necessary and essential incident of the mining operation conducted by the lessor, and defendant owed to them the duty to exercise the necessary care and caution to prevent injury to them at places where they reasonably and lawfully might be found. The extent of this duty is concisely expressed in *Humphreys* v. *Raleigh Coal & Coke Co., supra*, pt. 3, Syl: "A person using the silent, mysterious force called electricity, whose presence in deadly quantity cannot ordinarily be detected by any of the five senses without danger, in a place where he knows others may resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the instrument used in its application or some other adequate means." Further in the opinion the court says: "Therefore to use it at all by means of an insulated wire or other appliance where the user knows any person may for any reason come in contact with it, without knowledge of the use to which the appliance is devoted, is tantamount to the placing of a deadly mine or trap, however free the user may be from wrongful intent."

In its application to infants of tender years this rule does not rest upon any theory analogous to the "turntable cases," comprising what are commonly termed "attractive nuisances," but rests upon the broader and more fundamental principle that one who employs and uses a silent, dangerous and deadly force must exercise such care as is necessary to protect those who may reasonably be expected, through ignorance of the danger, to come into close proximity thereto. This is the duty generally recognized and enforced by courts, where the party injured was himself without fault. A brief review of a few selected cases will serve to show the variety and breadth of application made by the courts in dealing with this duty.

In *Temple* v. *McComb City Electric Light & Power Co.*, 89 Miss. 1, 10 Ann. Cas. 924, 11 L. R. A. (N. S.) 449, a boy ten

years of age was injured by coming in contact with an uninsulated wire while climbing among the branches of a tree in a populous part of the city. The court sustained his right to maintain the action, holding that the company must take notice of the propensity of boys to climb trees such as the one in question, which-was well adapted for the purpose, and anticipate the probability of their presence there. Similar holdings are found in *Benton* v. *Public Service Corporation,* 165 N. C. 354; *Thompson* v. *Flater,* 197 Mo. App. 247; *Williams* v. *Springfield Gas & Elesctric Co.,* 274 Mo. 1; *Mullen* v. *Wilkes-Carre Gas & Slectric Co.,* 229 Pa. St. 54; *Sweeten* v. *Pacific Power & Light Co,.* 88 Wash. 679; and the recent case of *Chickering* v. *Lincoln County Power Co.,* (Me.), 108 Atl. 460, involving a demurrer to the declaration,

In *Meyer* v. *Menominee etc. Light & Traction Co.,* 151 Wis. 279, a boy was killed through contact with an electric wire while playing on a lumber pile in a lumber yard, the wire being only two feet above the top of the pile. The court sustained the right to recover on the ground that the company knew or should have known that boys were accustomed to be on the lumber pile, and should have strung its wires so as to protect them from injury. In *Kribs* v. *Jefferson City Light, Heat & Power Co.,* (Mo. App.), 199 S. W. 261, defendant was held liable for injury resulting to a boy by reason of contact with a charged guy wire in a pasture through which persons frequently passed. See also *Connell* v. *Keokuk Electric Ry. & Power Co.,* 131 Iowa 622.

The case of *Braun* v. *Buffalo General Electric Co.,* 200 N. Y. 484, 21 Ann. Cas. 370, is somewhat analogous to the case before us. There defendant had strung its wires over a vacant lot in a city twenty-five feet above the ground. Subsequently a building was erected on the lot and a carpenter employed thereon came in contact with the wire at a point where the insulation had become defective, and was killed. In reversing judgment for defendant the Court of Appeals held that it was for the jury to determine whether the defendant should have apprehended that the premises on which the wires were strung might be so used as to bring persons in contact with them, and therefore should have guarded against such contingency. The court apparently took the

view that if an electric company knows or in the exercise of reasonable diligence should have anticipated that persons might come into close proximity to its lines, it is bound to exercise care to keep them in a safe condition.

Cases holding that such a company had breached no duty owed to a plaintiff injured by contact with its wires generally are distinguishable from those just cited upon the ground that the accident was of such a nature that the company in the exercise of reasonable care did not know and could not reasonably be expected to anticipate the presence of plaintiff at the point where the injury was received, or because the latter was aware of the danger and took the risk on his own responsibility. *O'Gara* v. *Philadelphia Electric Co.,* 244 Pa. St. 156; *Trout* v. *Philadelphia Electric Co.,* 236 Pa. St. 506; *Green* v. *West Penn R. Co.,* 246 Pa. St. 340; *Grube* v. *Baltimore,* 132 Md. 355, L. R. A. 1918 E., 1036. and note; *Kempf* v. *Spokane etc. R. Co.,* 82 Wash. 263; *Parker* v. *Charlotte Electric R. Co.,* 169 N. C. 68; *Roche* v. *New York Edison Co.,* 84 Misc. 427, 146 N. Y. Supp. 294; *Vannatta* v. *Lancaster Light & Power Co.,* 164 Wis. 344; *Wetherby* v. *Twin State Gas Co.,* 83 Vt 189, 21 Ann. Cas. 1092, and note; *Myer* v. *Union Light, Heat & P. Co.,* 151 Ky. 332.

Defendant insists that electric companies are not held to so high a degree of duty in rural districts as in populous communities. Such a statement is misleading in that it ignores the fundamental and essential test, whether the company knew or in the exercise of reasonable diligence should have anticipated the presence of persons lawfully upon the property who might come in contact with a charged wire. Because the likelihood of persons being in close proximity to and touching or striking such transmission lines is generally less in rural than in populous centers, there may in a particular instance be less reason to anticipate danger to others. On the other hand there may be circumstances where the danger to those lawfully near the wires is as great as in a crowded city. The duty to exercise diligence where there is known risk or where danger is reasonably to be anticipated remains the same in all cases and does not vary with the communities through which the cables pass.

Here the averments of the declaration locate the slag pile upon

which the accident occurred at a point in or near the village of Harewood, and further charge that children had been in the habit of playing thereon for a period of two years prior to the injury and with the knowledge of defendant, thereby imposing upon it the duty to guard against danger to them. This duty necessitated a high degree of diligence on the part of the company in the construction, maintenance, operation and inspection of its lines. Even ordinary diligence in this instance would have disclosed the proximity of the transmission line charged with its deadly current of 45,000 volts within a few feet of the top of the pile. The exercise of a reasonable degree of care to protect children known to frequent such place for play would have impelled defendant either to insulate its lines, if that is possible where so high a voltage is carried, to elevate them, or remove them entirely from the slag pile to another portion of the tract. Defendant having failed, according to the allegations of the declaration, to exercise any phase of this threefold duty, it follows that plaintiff has stated a cause of action against it, and the court erred in sustaining the demurrer.

For these reasons our order will reverse the ruling of the lower court, overrule the demurrer to the second amended declaration, and recertify the case.

*Reversed, demurrer overruled.*