# CHARLESTON.

LEE R. COLEBANK, *Adm'r. Etc. v.* NELLIE COAL & COKE COMPANY

(No. 6225)

Submitted November 20, 1928.   Decided November 27, 1928.

*Stanley R. Cox* and *Frank Cox,* for plaintiff in error.
*Glenn Hunter,* for defendant in error.

MAXWELL, JUDGE:

This is the second time this case has been before this Court. In the first instance, the circuit court, after sustaining a demurrer to the plaintiff's declaration, certified its ruling here,

and upon consideration whereof, this Court being of opinion that the declaration was good, overruled the demurrer and remanded the case for further proceedings. *Colebank* v. *Nellie Coal & Coke Company,* 103 W. Va. 15. Subsequent to the time of remanding the case the same was put on trial before a jury, and at the conclusion of the introduction of plaintiff's testimony the court sustained a motion of the defendant to strike out the plaintiff's evidence and direct a verdict for the defendant. The plaintiff excepted to the action of the court and moved that the verdict which had been directed be set aside and a new trial awarded. The court overruled the motion and entered judgment *nil capiat*. The plaintiff prosecutes this writ of error.

On the 6th day of December, 1925, plaintiff's decedent, a child nine years of age, while playing on the property of the defendant, received burns from which he died on the morning of the second day following the injury. This suit is by the administrator to recover from the defendant damages for the alleged wrongful death of the decedent. The defendant was engaged in conducting a coal mining operation on a tract of approximately 293 acres of land which it owned in Union district, Monongalia county. This property was uninclosed, and there were thereon at least two distinct locations where children of parents residing on the property and neighboring children were accustomed to play. The deceased child lived with its parents on the father's property just across the road from defendant's property herein discussed. The father was an employee of defendant and worked at a tipple some distance away. Numerous witnesses testify that repeatedly they saw groups of children ranging in number from four or five to two dozen or more engaged in play on these premises; that their presence was to be noted almost daily in weather which was suitable for out-door recreation, and that this use of the property by children for play had continued not only from the time that the defendant had acquired its deed for the property in 1923, but prior thereto. The two sections of the property to which the children usually went for play had been used by them to such an extent that paths had been worn between bases where they played ball so that "baseball

diamonds'' appeared clearly marked on the ground. The girls as well as boys played there. Other games, such as tag and hide and seek were played by the children. This use of the property was known to the officers and agents of the defendant and no protest against the same had ever been made.

About six hundred feet from one of the playgrounds and about three hundred feet from the other one was located a small frame building which had originally been constructed for an outhouse or privy, but had not been much used in the last year or two before the accident here involved for the purposes for which it had been erected, though there is evidence that it was occasionally used for that purpose. A little more than a year prior to the date of the accident, employees of the defendant placed in this outbuilding several cans of rock powder, or giant powder, apparently six cans, though one witness thinks there were nine. When the powder was first placed in this little building, a wooden bar was nailed across the door, but it appears from the evidence that during at least the latter part of the year just preceding the accident, this bar had been torn away or removed and the door stood open a large part of the time, if not, in fact, all the time. At the time of the accident one of the cans of powder was open and had been open for a considerable period of time. Who opened it does not appear. On the day of the accident the plaintiff's decedent and three other small children of about his age went to the little outhouse to get a whip that one of the children had left there earlier in the day, and while there they put some of the powder in their pockets, and one of the children put some of it into a can; they then went some little distance from the building where they placed the can on the ground and applied a lighted match; nothing happening immediately, the children circled around close to the can to see what was the trouble. A frightful disaster followed. The explosion of the powder in the can ignited the powder in the pockets of the clothing of the children with the result that two of them were fatally burned and the other two were seriously injured.

In justification of the action of the trial court in striking

out the plaintiff's testimony and directing a verdict for the defendant, it is said that the children were trespassers or mere licensees, and that the defendant owed them no other duty than not wantonly to injure them, and that there being no evidence of wanton injury there was in the case no basis on which a verdict should be predicated against the company and therefore under well recognized rules of procedure, it was the court's duty to take the case from the jury.

This is a question of negligence which cannot be solved by determining whether on the occasion of the accident the children were mere licensees,—trespassers, or were invitees. If it is to be said as a matter of fact that by reason of the long use of the premises by the children for purposes of play, with at least the tacit consent of the officers and agents of the company, there was an implied invitation to the children to use the premises for play, then the company owed to the children a very high degree of care for their safety. *Diotioliavi* v. *Coal Company,* 95 W. Va. 692, 697, and authorities cited. On the other hand, if it is to be said on the facts that there was no implied invitation to the children to use the property for play and that the children were mere licensees or trespassers, it does not follow as a matter of law that the company owed no other duty than not wantonly to injure them. An owner of land owes some duty even to trespassers. He may not wantonly injure them, and, in addition, if his property is being used with his knowledge by other people he may not without liability permit to exist thereon in a negligent and careless manner a dangerous factor which may destroy the life or limb of those to whose use of his property he tacitly consents, or, at least, does not object. This is particularly true where little children are involved. There is nothing more beautiful in life than the spirit of play which animates little children. It is a God given heritage and a universal instinct to which men may not close their eyes. To foster and encourage wholesome play and thus contribute to the happiness and well being of children must be considered a normal desire of ordinary people. Where this is not true cupidity outweighs humanity. It must also be recognized that children are actuated by childish impulses and that

in innocent amusement and play it is to be expected that they will be attracted by things which interest them, and that they are not likely to keep hands off of things which promise amusement. One of the children who was with decedent at the time of the accident testified that he had theretofore taken a small quantity of the powder out of the open can in the outhouse and had thrown it on the fire in an open grate where it "sparkled", and that when he and his companions later took more and put a lighted match to it he thought it would sparkle in the can.

The alleged negligence of the defendant should have been determined by the jury as a mixed question of law and fact. The jury should have had opportunity to determine, first, whether the children were constructive invitees of the defendant, and, if so, whether the defendant exercised toward them the degree of care which the law requires to be accorded to invitees; and, second, whether the children were mere licensees,—trespassers, and, even so, whether under the facts and circumstances of the case the defendant exercised toward the children the degree of care which the law exacted of it. In the North Carolina case of *Stephens* v *Blackwood Lbr. Co.,* 131 S. E. 314, it appears that a boy 14 years of age obtained some blasting powder from a mill-house and later the same evening, about three miles from the place where he obtained the powder, he ignited with a match an envelope containing some of the powder with the result that he was fatally injured. On the trial, at the conclusion of the introduction of plaintiff's testimony, the court struck out the evidence and directed a verdict for the defendant. The appellate court said that there were presented on the record two questions: "First. Do the facts which the jury would have been justified in finding from the evidence constitute negligence on the part of defendants? Second. If so, was such negligence the proximate cause of the death of plaintiff's intestate?" On the second proposition the court said, that, considering the boy's age, it could not be said that he did not know and understand the danger of the instrumentality with which he was dealing, and therefore it was his own negligence in setting fire to the envelope containing the powder which was the

proximate cause of the fatal accident, and on that ground the action of the trial court in directing a verdict for defendant was sustained. But in discussion of the first proposition, namely, as to whether the jury might have found from the facts that there was negligence on the part of the defendant, the court said that the defendant owed a duty to the intestate, even if he was technically a trespasser, of a higher degree than not wilfully to harm him, and that there was sufficient evidence in the case to warrant its being submitted to the jury upon the question of the defendants' negligence.

"One keeping or storing dangerous explosives must exercise reasonable care, which is such care as is commensurate with the apparent danger. Accordingly it is said that the utmost caution and highest degree of care must be used in the care and custody of dangerous explosives, such as powder and dynamite, and a high degree of care is required in the possession and storage of explosives generally, especially where young children are involved." 25 C. J., p. 185.

"It is common information that powder is very attractive to immature children, and that if opportunity is presented they may be expected to meddle with it. The law charges one in possession of powder with this information, and imposes on him the highest degree of care to protect children from injury when the powder is accessible to them. Failure to exercise such care, resulting in injury, will impose liability." *Wellman* v. *Fordson Coal Co.*, 105 W. Va., 463, 143 S. E. 160. This is general law. Many other cases so declare. In the Michigan case of *Powers* v. *Harlow*, 19 N. W. 257, Justice Cooley said: "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken." Another succinct statement of the law is found in *Mattson* v. *Minnesota & N. W. R. Co.*,

(Minn.), 104 N. W. 443, wherein the court says: "The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article * * * and is greater and more exacting as respects young children." In the case of *Miller* v. *Chandler*, 182 S. W. 833, the Kentucky court thus states the rule: "The authorities are abundant and harmonious that where one stores dangerous explosives in a place upon his premises, which he knows is accessible to and frequented by children, he does not exercise the ordinary care and reasonable precautions he is bound as a social duty to exercise to prevent accidents to children playing with or in the vicinity of such explosives." A few other pertinent cases are: *Olson* v. *Gill Home Investment Co.*, (Wash.), 108 Pac. 140; *Bryan* v. *Stewart*, (Ala.), 70 So. 123; *Wood* v. *Chalmers Motor Co.*, (Mich.), 175 N. W. 449; *Millum* v. *Coal Company*, 225 Pa. St. 214, 73 A. 1106; *Gawronski* v. *McAdoo*, 266 Pa. St. 449, 109 A. 763; *Little* v. *Coal Co.*, (Ky.), 180 S. W. 519.

In justification of the ruling of the trial court, we are referred to the case of *Simmons* v. *C. & O. R. R. Co.*, 97 W. Va. 104. In that case there was involved the certification of the action of the trial court sustaining a demurrer to a declaration. In determining the matter presented, this Court recognized the principle that a property owner is under no other duty to a mere trespasser than not wantonly to injure him, and that the rule is applicable though the trespasser be a child of tender years. In that case a child procured a dynamite cap from under a tool house of the defendant on its property, and, with the use of a large bolt, exploded the cap with the resulting loss of one of its eyes. It appears that this child and other children were accustomed to play in the vicinity of the tool house without objection from the defendant's foreman who knew that the children were playing there. The distinctions between that case and the one at bar are, first: the vicinity of the place of the accident had not come to be a

community playground as in this case, and second, the explosive which caused the accident had been casually dropped from the tool house, while in the case at bar the open can of powder remained for a very considerable period of time as an enticement and attraction to any children who might happen to discover it. In the *Simmons case* disaster to children was not to be foreseen from the probably unobserved dropping of an explosive cap, while in the instant case disaster such as happened was a thing reasonably to be anticipated from the continued exposure of the powder at a place near where children were known to frequent. None of the West Virginia cases relied on by the defendant meet the propositions here involved.

The facts and circumstances of this case require that we give more concern to the duties that devolve upon those who use and store high explosives than to the rules which ordinarily determine the status of trespassers or mere licensees.

For the reasons aforesaid the judgment of the circuit court is reversed and the case is remanded for a new trial.

*Reversed and remanded.*