Della Jane Sutton, *Administratrix, Etc.*
*v.*
Monongahela Power Co., *A Corporation, et al.*
(No. 12656)
*and*
Della Jane Sutton, *Administratrix, Etc.*
*v.*
Monongahela Power Co., *A Corporation, and*
Chester Addington, *Etc.*
(No. 12657)

Submitted September 19, 1967. Decided December 5, 1967.

962

*William W. Talbott, A. L. Sommerville, Jr., William M. Kidd,* for appellant, Della Jane Sutton.

*Ernest V. Morton, Jr., Furbee, Amos, Webb & Critchfield, Alfred J. Lemley,* for appellees, Monongahela Power Co.

BERRY, JUDGE:

These two appeals have been consolidated for disposition inasmuch as the same facts control the issues involved in both appeals. This action was instituted in the Circuit Court of Webster County, West Virginia, by Della Jane Sutton as Administratrix of the Estate of Richard Irland Sutton, deceased, appellant in case number 12656 and appellee in case number 12657, to recover damages for the alleged wrongful death of plaintiff's decedent. Plaintiff's decedent, Richard Ir-

land Sutton, a ten year old infant, was electrocuted on June 24, 1964, when he fell on a 2400 volt electrical transmission line owned by the defendant Monongahela Power Company, a Corporation, appellee in appeal number 12656, while the said infant was playing on a sawdust pile located on land owned by Chester Addington, appellant in case number 12657. At the conclusion of the plaintiff's evidence the trial court directed a verdict in favor of both the defendant Monongahela Power Company, appellee herein, and Chester Addington, appellant herein. Upon motion of the plaintiff to set aside the directed verdict in favor of both the defendants and to grant to her a new trial, the trial court on June 2, 1966, sustained the motion of the plaintiff as to the appellant Chester Addington, the landowner, and awarded her a new trial against him, but overruled the motion to grant to her a new trial as to the appellee Monongahela Power Company.

The plaintiff, Della Jane Sutton, Administratrix of the Estate of Richard Irland Sutton, deceased, applied for an appeal for the refusal of the trial court to grant to her a new trial against the Monongahela Power Company, and the defendant landowner Chester Addington applied for an appeal relative to the trial court's granting a new trial as to him. Both appeals were granted by this Court on March 13, 1967 to the judgment of the trial court on June 2, 1966, the two appeals were heard together on arguments and briefs of the respective parties and submitted for decision at the September, Regular Term, 1967, of this Court.

On June 24, 1964, the plaintiff's decedent, with four other boys around his own age, one of whom was his brother, Kenny Ray Sutton, 11 years of age, and three brothers, Darrel Ray Morris, Bobby Morris and Carl David Morris, respectively 9, 10 and 12 years of age, using four bicycles, had been in search of bicycle parts and had visited various places in their search for the parts but were unsuccessful in obtaining them. Around two o'clock in the afternoon, at the suggestion of

Carl David Morris, the oldest of the group of boys, they went to the site of a former sawmill where Carl had apparently visited on another occasion. The mill had burned in February, 1964, but there was on this property owned by Chester Addington and previously used in connection with the sawmill a pond and the sawdust pile some thirty feet in height. The property was located in a rural area and there was only one house in the immediate vicinity, the residence of Mr. and Mrs. Russie Hardway. There was a public road ending at the sawmill premises and the sawdust pile was located about a mile and a quarter from the home of plaintiff's decedent, but could not be seen from the home.

Upon arriving at the sawdust pile, pond and burned sawmill the boys parked their bicycles near the sawdust pile and after looking around the area started climbing and sliding down the sawdust pile. A wire was observed by one or more of the boys and some discussion was had among them as to whether or not it was a charged electrical wire. This statement was heard by Mrs. Hardway who lived nearby. She also testified that she heard one of the boys say that he observed a "no trespassing" sign on the premises. The boys avoided the wire by either crawling under or stepping over it on the first occasion of climbing and sliding down the sawdust pile but apparently on the second trip the plaintiff's decedent, while near the wire, was thrown upon it by a sliding of the sawdust and he fell with his neck across the wire and was instantly electrocuted. One of the Morris boys attempted to pull him off the wire and he was rendered unconscious by the contact. One or more of the boys ran over to the Hardway home and Mrs. Hardway called the fire department at Cowen which arrived about fifteen minutes later, and about five minutes afterwards employees of the Power Company arrived and turned off the power near the road and then cut the wire so that the child could be removed from it.

The line in question was located on poles which ran through the property of Chester Addington. There are three spans of unequal lengths in that immediate area. One of the poles was near the road, another near the sawdust pile and a third was located on a hill above the sawdust pile. The power line ran near the top of the sawdust pile but slightly to the side between 2 and 2½ feet from the sawdust pile. The evidence indicated that the pole near the sawdust pile was one foot out of line as compared to the other two poles, and that the power line sagged about four feet three inches, causing it to lean toward the sawdust pile. The spans between the poles were in the neighborhood of seven hundred feet and it was the contention of the plaintiff that the distance between the pole or poles violated the construction requirements of the National Electrical Safety Code governing such matters, as required by the rules of the Public Service Commission of West Virginia which have been given the effect of the statute in this State.

The evidence also shows that the base of the pole near the sawdust pile was set in soft sawdust and one of the witnesses who testified on behalf of the plaintiff stated that he had inserted a pole through this soft sawdust for a distance of five feet at the base of the pole. There was also testimony that there were big rocks located around the base of the pole but that there were no guy wires on the pole.

The sawmill in question was formerly owned by James Berthy who operated it from 1947 until about 1957 at which time he sold it to Chester Addington. Addington operated it until it burned in February, 1964. During the time that Berthy operated his sawmill he bulldozed the then existing sawdust pile into a gully nearby and apparently filled it up. During the time that Addington operated the sawmill the sawdust was blown out of an elevated eight inch pipe into the air where it settled below into a mound about thirty feet high. The sawdust pile continued to remain in its location and at the same height after the

mill burned, which was a period of over four and one-half months until the time of the accident. The power line in question had been located at that site since about 1950, and, although the power company had a right of way, the record indicates there was a controversy between the power company and Addington as to whether the power company line was located on its right of way and this was the object of another law suit which had not been disposed of at the time of the trial of this case.

The condition of the power line being out of plumb and leaning toward the sawdust pile within about 2 or 2½ feet of the pile had existed for some time before this fatal accident and at least for a period of more than two months. Evidence was introduced that children had played around the sawdust pile and mill when the former owner Berthy operated it, which was some seven or eight years before this accident occurred, and the trial court sustained an objection to this evidence on the ground that it was too remote.

However, about eleven o'clock in the morning of the day plaintiff's decedent was electrocuted another group of four boys visited the same premises and engaged in the same activity as the group of boys at the time the plaintiff's decedent was electrocuted, and in sliding down the sawdust pile at that time one of the boys came in contact with the power line and was severely shocked and received a burn on his finger and upon returning home informed his mother who, after realizing that her son had been burned, called the office of the defendant power company and talked with a young lady who was employed as a clerk in its Cowen office. She told the clerk what had happened and in describing the site said that it was either at the Brewster or Berthy mill. The manager of the power company was not in the office at the time the call was made and there is no evidence that he was advised of the earlier occurrence, but apparently he was on his way back to Cowen at the time the fatal accident occurred about two or three hours later and

arrived on the scene about twenty minutes after it occurred.

Several errors are assigned by both the plaintiff as appellant against the defendant power company, and the appellant Addington, land owner, but all of the assignments relate to the actions of the trial court in directing the jury to find the verdict in favor of both the power company and Addington and later sustaining plaintiff's motion for a new trial as to the defendant Addington, but denying the plaintiff a new trial as to the power company. In other words, the only question for this Court to answer on both appeals is whether or not there was sufficient evidence introduced during the trial to warrant the submission of the question of liability for jury determination as to either one or both of the defendants.

It is the contention of the plaintiff that the motions for directed verdict did not specify grounds upon which the court acted. There is no merit to this contention because the motions were sufficient to call for a finding of the court that there was no actionable negligence on the part of the defendants. However, there was no objection or question raised in the trial court with regard to the form of the motions and the matter therefore cannot be considered by this Court. 2B Barron & Holtzoff, Federal Practice and Procedure, §1073, page 370; 5 Moore's Federal Practice, §50.04. The plaintiff asserts that it was error for the court not to take judicial notice of the National Electrical Safety Code, the violation of which constitutes prima facie negligence. See *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d 81. However, the trial court stated in its opinion that it had taken judicial notice of this Code, but the Code was not contained in the record. It is contended that it was error for the trial court not to allow certain photographs taken at the scene of the accident to be considered in the evidence. There was a question raised at the time that the photographs did not accurately convey the condition of the scene of the accident at

the time it occurred and further, that the jury viewed the scene of the accident. The photographs are not contained in the record and this is a matter that is usually held to be in the discretion of the court. The testimony of the former owner of the mill, James Berthy, with regard to children playing in the area while he operated it some seven or more years before the accident occurred was questionable as to whether or not this would charge the defendant Addington with notice of this situation unless he actually had personal knowledge of such instances because of the time element involved before he purchased the property.

The contention of the plaintiff that the doctrine of res ipsa loquitur is applicable in the case at bar is not well taken because the evidence indicates that the plaintiff relied on specific acts of negligence to prove liability against the defendant and attempted to show divided responsibility and specifically explained how the accident occurred. *Laurent v. United Fuel Gas Company,* 101 W. Va. 499, 133 S. E. 116; *Mullins v. Baker,* 144 W. Va. 92, 107 S. E. 2d 57; *Johnson v. Monongahela Power Company,* 146 W. Va. 900, 123 S. E. 2d 81. This principle is clearly stated in Pt. 1 of the syllabus of *Laurent v. United Fuel Gas Co., supra,* in the following language: "The doctrine of res ipsa loquitur cannot be invoked if defendant does not have control or management of the premises or operations where the accident occurred; or where there is divided responsibility, and the unexplained accident may have been the result of causes over which defendant had no control."

The plaintiff asserts that the trial court erred in ruling that the plaintiff's decedent was a trespasser as to the defendant power company, even though they were trespassers as to the defendant Addington who owned the land.

There is a split of authority on this question which is concisely stated in 26 Am. Jur. 2d, §86 at page

292, wherein it is stated: "Where the wires are placed where children must trespass upon the property of a third person to reach them, some courts permit the one maintaining the wires to take advantage of the fact of the trespass for his own relief from liability; other cases deny such a right." However, the better view is, as indicated by the authorities, that even though a child is a trespasser on the property of a third party, he is not a trespasser as to the one who maintains electric wires near objects where he may come in contact with the wires. See 27 A.L.R. 2d 204, Annotation: Electric Wires, at page 207.

The appellant Addington assigns error on the part of the trial court in granting the motion to set aside the directed verdict in his favor, and in failing to find as a matter of law that the plaintiff's decedent was barred from recovery against Addington because he was a trespasser; in finding that Addington knew, or should have known, that children came upon his land and played on the sawdust pile which was in close proximity to the leaning power line creating a dangerous situation which would likely injure or kill children; that the court erred in applying the "dangerous instrumentality" rule as to Addington; that it erred in failing to find as a matter of law that the plaintiff's decedent was guilty of contributory negligence and assumption of risk barring recovery.

We have set out above the various assignments of error by the appellants in both appeals and commented briefly regarding some of the assignments.

The law governing the disposition and right to recovery is applicable in most instances to both the defendant power company and the defendant landowner. It is true that the plaintiff's decedent may have clearly been a trespasser as to the landowner, but there is a split of authority as to whether he was a trespasser as to the power company, and we are of the opinion that this difference is not controlling

in the disposition of this case. Although the Attractive Nuisance Doctrine is not recognized in this State, this Court has adopted a rule quite similar to that Doctrine and has held that where a dangerous instrumentality or condition exists at a place frequented by children who thereby suffer injury, the parties responsible for such dangerous condition may be held liable for such injury if they knew, or should have known, of the dangerous condition and that children frequented the dangerous premises either for pleasure or out of curiosity. *Love v. Virginian Power Co.*, 86 W. Va. 393, 103 S. E. 352; *Waddell v. New River Co.*, 141 W. Va. 880, 93 S.E. 2d 473; *Hatten v. Realty Co.*, 148 W. Va. 380, 135 S. E. 2d 236. Under this doctrine where the defendants know or should know of such dangerous instrumentality and the repeated presence of children, the mere fact that they are trespassers does not bar recovery. 38 Am. Jur., Negligence, §118; *Parsons v. Appalachian Electric Power Co.*, 115 W. Va. 450, 176 S. E. 862; *Waddell v. New River Co., supra*.

The mere presence of a thirty foot sawdust pile by itself is not a dangerous instrumentality. There is no question but that a power line carrying 2400 volts of electricity is a dangerous instrumentality. *Love v. Virginian Power Co., supra; Parsons v. Appalachian Electric Power Co., supra*. The presence of both the sawdust pile and the leaning power line in close proximity to each other constitutes a dangerous instrumentality. See *White v. Kanawha City Co.*, 127 W. Va. 566, 34 S. E. 2d 17; *Hatten v. Mason Realty Co., supra*.

The sawdust pile had reached the height of thirty feet at least five and one-half months before this fatal accident occurred and the defendant Addington who owned the property and operated the mill knew the height of the sawdust pile. He knew that the power line ran close to the high sawdust pile and that for at least two months the power line had sagged and leaned within about 2 or 2 1/2 feet of the sawdust pile.

972

One of the same children who was present at the time the plaintiff's decedent was electrocuted had been at the scene before and had observed this condition. There is no question from the evidence in this case but that children played on the sawdust pile located on the property in question for some time before this accident happened. Whether the defendant Addington actually saw children playing on it would not relieve him from responsibility of alleviating this dangerous condition existing on property owned by him as the former owner had done. He knew the possibility of danger because he was aware of the power line near the sawdust pile and the height of both, making the pile and power line in close proximity to each other at the time the sawmill burned and he ceased operation. He knew or should have known that children, because of their natural curiosity and love of adventure, would be attracted to the sawdust pile. 26 Am. Jur. 2d, Electricity, Gas, and Steam, §71; *Parsons v. Appalachian Electric Power Co., supra; Hatten v. Mason Realty Co., supra; Colebank v. Nellie Coal & Coke Co.,* 106 W. Va. 402, 145 S. E. 748; *Adams v. Virginian Gasoline & Oil Co.,* 109 W. Va. 631, 156 S. E. 63. The West Virginia rule relative to this matter is concisely stated in point 1, syllabus of the *Adams* case cited above, in the following language: "An owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated."

The liability of the defendant power company under the circumstances of the case at bar is much clearer. The mere fact that it had a power line over the property in question does not by itself make for liability. However, the fact that it had a power line attached to an insecure pole which was out of line and leaning to within close proximity of the sawdust pile involved herein, is an entirely different matter. A jury could

infer that the power company knew or should have known the existing condition with regard to the sawdust pile and its power line and knew or should have known even more so than the defendant landowner that children were wont to play on the sawdust pile. It had a duty to inspect the power line in question at reasonable intervals. 26 Am. Jur. 2d, Electricity, Gas, and Steam, §77 at page 285, 27 A.L.R. 2d 204, Annotations: Electric Wires, §4 at page 216; *Hill v. Carolina Power and Light Co.*, (S.C.) 28 S. E. 2d 545. This is a common law duty and no doubt required under the National Electrical Safety Code. Had the power company inspected the power line at reasonable intervals the dangerous condition could have been easily ascertained.

The mere fact that this condition existed in a rural area does not relieve either the power company or the landowner of the responsibility in such cases. 26 Am. Jur. 2d, Electricity, Gas, and Steam, §78, at page 286; 27 A.L.R. 2d 204, Annotations: Electric Wires, §8 at page 222. Although it is true that this accident occurred in a so-called rural area near Upper Glade in Webster County and apparently some distance from the hard surfaced road, it was only a mile and a quarter from the home of plaintiff's decedent and near a rural public road. The case of *Love v. Virginian Power Co.*, 86 W. Va. 393, 103 S.E. 352, is similar to the case at bar, about the only difference being that in the *Love* case the plaintiff's decedent lived in a house owned by the coal company near where a slag pile had been built upon which he climbed and touched the power line and was electrocuted. In that case the power line was firmly set in the ground and did not sag or lean toward the slag pile. It was held that these facts alleged in the declaration were good on demurrer. The principle involved in such cases is clearly stated in Point 2 of the syllabus in the *Love* case, wherein it was stated: ''A company maintaining an electric line, over which a current of high and dan-

gerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means.'' The duty with which a power company is charged in cases such as the one at bar is set out in the case of *Maggard v. Appalachian Power Co.*, 111 W. Va. 470, 163 S. E. 27, and has been approved in the comparatively recent cases of *Frye v. McCrory Stores Corp.*, 144 W. Va. 123, 107 S.E. 2d 378, and *Johnson v. Monongahela Power Co.*, 146 W. Va. 900, 123 S.E. 2d 81, in all of which it is stated: ''Those who operate and maintain wires charged with dangerous voltage of electricity are required to exercise a degree of care commensurate with the dangers to be reasonably apprehended therefrom; but they are not insurers against all injury therefrom.''

In cases of this kind it may be held that recovery would be denied where the accident was of such unusual nature that the parties responsible for the existence of the dangerous condition could not have reasonably anticipated and provided against it. 26 Am. Jur. 2d, Electricity, Gas, and Steam, §71, 17 A.L.R. 833, Annotation: Electric Wires, Injury to Children, at page 841; *Waddell v. New River Co.*, 141 W. Va. 880, 93 S.E. 2d 473; *Musser v. N. & W. Ry. Co.*, 122 W. Va. 365, 9 S.E. 2d 524.

This situation is clearly illustrated in the *Musser* and *Waddell* cases cited above which, on the facts, are entirely different from the case at bar. In the *Waddell* case a fourteen year old boy went onto the property of the defendant, the owner of the property and the power line, climbed up two parallel guy wires bracing the power line pole and reached out and touched the power line and was electrocuted. Certainly such action on the part of the boy could not have been rea-

sonably anticipated and this Court held that there was no liability on the part of the defendant. In the *Musser* case a thirteen year old boy was killed when he dangled a chain from a water box on a bridge and the chain apparently intentionally came in contact with the power line of the defendant several feet below. It was held in that case that such action on the part of the boy could not have been reasonably anticipated and recovery was denied. This principle is clearly stated in Point 3 of the syllabus in the *Musser* case wherein it is stated: "A person in charge of or maintaining an instrumentality inherently dangerous is not liable to one who is injured thereby in a manner which could not be reasonably anticipated."

In the case of *Lewis v. Mains,* 150 Me. 75, 104 A. 2d 432, cited in the brief of the appellant Addington, the Maine Court held a landowner was not liable for injuries to a child who climbed a sawdust pile and came in contact with a power line over the pile and was electrocuted. This Court does not approve the holding in that case as the law in the State of Maine is apparently different from that of this State with regard to such cases. The Court in the *Mains* case stated that the defendant owed no duty to an infant trespasser or a mere licensee to use care to keep the premises in a safe condition and clearly indicated that it did not recognize the rule adhered to in West Virginia with regard to dangerous instrumentalities which may be attractive to children.

It is contended by both the power company and the land owner Addington that the plaintiff's decedent was guilty of contributory negligence and assumption of risk. In West Virginia an infant between the ages of 7 and 14 years is presumed not to be capable of contributory negligence, although it is a rebuttable presumption. In the case of *Parsons v. Appalachian Electric Power Co., supra,* which involved an eleven year old child who climbed upon a bridge and came

in contact with a power line and was electrocuted, it was held that contributory negligence was a jury question. These questions in cases of this kind are usually left for determination of the jury. 26 Am. Jur. 2d Electricity, Gas, and Steam, §93 E. Contributory Negligence, Assumption of Risk, page 299. See *Virginia Electric & Power v. Maben,* 203 Va. 490, 125 S.E. 2d 145; *Humphreys v. Raleigh Coal & Coke Co.,* 73 W. Va. 495, 80 S.E. 803.

In cases involving a land owner and an easement over the land both the land owner and holder of the easement have mutual rights and duties. See *Hill v. Carolina Power & Light Co., supra.* If the fatal injury to the plaintiff's decedent was caused by the combination of negligence both on the part of the power company and the landowner and without such combination the fatal injury would not have occurred, both the landowner and the power company would be guilty of concurrent negligence. See *Metro v. Smith,* 146 W. Va. 983, 124 S.E. 2d 460.

Under the facts and circumstances of this case, we are of the opinion that the questions of negligence, contributory negligence and assumption of risk are all questions for jury determination as to both the defendant Monongahela Power Company and the defendant Addington, the landowner, and that the trial court erred in sustaining its directed verdict as to the power company but was correct in sustaining the plaintiff's motion to grant her a new trial as to the landowner.

For the reasons enunciated herein, the judgment of the Circuit Court of Webster County is affirmed as to the defendant Addington; reversed as to the Monongahela Power Company; and a new trial is granted to the plaintiff as to both defendants.

> *Affirmed in part; reversed in part; new trial awarded.*