ROBERT BRYANT, AN INFANT, ETC. *v.* GUYAN VALLEY OIL COMPANY ET AL.

(No. 7121)

Submitted February 23, 1932. Decided March 1, 1932.

W. M. Holroyd, E. L. Phillips, R. F. Musgrave, and Buford C. Tynes, for plaintiff in error.

Bailey & Shannon, for defendant in error.

WOODS, JUDGE:

Robert Byrant, by his next friend, seeks to recover damages for injuries sustained by reason of the explosion of a certain gasoline storage tank, which he charges the Guyan Valley Oil Company, a corporation, and the town of Corinne, a municipal corporation, negligently allowed and permitted to remain under a public walkway in said town in an unsafe condition. He prosecutes error to the action of the circuit court of Wyoming county in directing a verdict for the oil company, and in setting aside a verdict of $1,000 against the town.

The tank, together with the necessary fixtures and equipment for retailing gasoline, which was the property of Guyan Valley Oil Company, had, prior to 1929, been loaned, under contract, to the Miller-Pocahontas Coal Company for use in vending gasoline which was purchased for cash from said oil company. The coal company's store building faces on a street running north and south. On the north is an alley. The tank was buried under the way used by pedestrians between the alley and the steps leading down from the north end of the platform in front of the building. A board walk ran along the eastern edge of the street to the north of the

alley. Had it extended to the steps of the company store, it would have crossed over the position occupied by the tank. The intake pipe (about six inches in diameter) was located a short distance to the east of the tank—about two feet beyond the space which would have been occupied by the board walk, had it been projected as suggested above. This pipe protruded about twelve to fourteen inches above the ground, and was equipped with a locking device. After the Miller-Pocahontas Coal Company became a bankrupt, the store seems to have been operated by some third person, who used the equipment, until April or May, 1929. After that time, no further gas was furnished. The tank, pump and other equipment although not in use for over nine months was permitted by its owner, Guyan Valley Oil Company, to remain in front of the store property. E. L. Harvey, who had been employed by the Guyan Valley Oil Company to distribute gasoline to its fifteen retail outlets, states that prior to November 1, 1929, the date he left the company, he saw to it that the intake was closed and locked. The explosion occurred on January 17, 1930. Three inches of gas was in the bottom of the tank after the accident. There is also evidence to the effect that the intake had been permitted to be left open, unlocked and unfastened for some thirty days or more before the last mentioned date, and that knowledge of such condition and the serious results which might readily result therefrom were known to the chief of police of the town, and should, by exercise of reasonable care, have been brought home to the oil company.

It appears that plaintiff, a child of five years, and Robert Sparks, age six, while playing in front of the store building and close to the gasoline pump, placed a burning piece of paper close to the intake pipe, thereby causing the explosion. The Sparks boy was killed by reason thereof, and the plaintiff hurled with great force and violence some fifteen feet against a paling fence, his chest lacerated, his face and head severely burned, and his ears injured.

. While the Miller-Pocahontas Coal Company or the person in charge of the store at the time of the accident, or both, may be liable as joint tort-feasors, which we do not here decide,

plaintiff had a right to limit his action to the oil company and the town, if he so desired. *Hutcherson* v. *Slate,* 105 W. Va. 184, 142 S. E. 444.

The defense interposed, as indicated by instructions requested by defendant, and refused by the court, is based primarily upon one premise—that the plaintiff was a trespasser.

It is quite clear from the evidence that the tank was beneath that portion of the ground actually set apart by the town for use as a sidewalk, or way, by the public. But, say the defendants, the intake is some two feet from the edge of said sidewalk and near the store building—in other words, that it is on the coal company's private property. It is admitted, however, that there was no actual visible division line between the street or sidewalk and the store building. The narrow strip east of the imaginary projection of the board walk was left open along with the dirt walk-way, and was apparently in use as such. Would not the jury under these circumstances be warranted in believing that this open space on which the intake was located was a practical extension of the sidewalk, or travelled way, or that its proximity to the travelled way endangered travellers thereon? In such case, the plaintiff was not a trespasser, but had the legal status of a traveller to whom the defendants owed the duty of reasonable care. See the case of *Sedita* v. *Steinberg,* 105 Conn. 1, which involved an injury, under similar circumstances, to a nine-year-old boy, by gasoline explosion. The facts in the instant case, as we view them, do not involve the doctrine of attractive nuisance, so called, which has been repudiated in this state. In *Grogan* v. *Schiele,* 53 Conn. 186, I. A. 899, 902, upon which the decision in *Sedita* v. *Steinberg, supra,* was based, plaintiff was injured by reason of an unguarded opening seven feet two inches inside the line of the sidewalk, located on defendant's land, being an open street between the front of the factory and the sidewalk. This space and sidewalk were all of the same grade. While the general course of the sidewalk was indicated by that portion on each side of the defendant's lot, there was nothing to mark the exact line of separation between the sidewalk and the defendant's land.

The court there said: "There is no principle of law or justice which will warrant a court in holding a person to be a trespasser who uses as a public way an apparent public sidewalk kept so by the act of the defendant, simply because he stepped over the technical legal boundary line. By the construction of the walk, the plaintiff, as one of the public was told in an emphatic way that the sidewalk extended to its full apparent width." We have only to compare the facts in the instant case with those from which we quote to understand its analogy to the principle in question here. The case of *Beck* v. *Carter*, 13 N. Y. 604, is to like effect.

This same doctrine was substantially adopted by this court in the case of *Starcher* v. *Oil Company*, 81 W. Va., 588, 95 S. E. 28. There one constructing a pipeline across a road or way not a public highway, which to his own knowledge was used by the public as a highway, is under the same obligation to construct and maintain such pipeline in a reasonable safe condition as though such road were in fact a public highway. Illuminating cases concerning the duty owed to children by those handling dangerous agencies, including gasoline, are *Colebank* v. *Nellie Coal Co.*, 106 W. Va. 402, 145 S. E. 748, and *Adams* v. *Gasoline & Oil Co.*, 109 W. Va. 631, 156 S. E. 63. In the latter case, the court held that an owner or proprietor of a dangerous instrumentality must exercise reasonable care to avoid injury to a trespassing child, whose presence at the time and place of danger was either known to the proprietor or might reasonably have been anticipated.

The apparent danger of the open intake was made known to the chief of police, some time prior to the time of the accident. This brought knowledge to the municipality of the unsafe condition of the tank, which it had permitted to remain under one of its walk-ways. The town will not now, in view of the jury verdict, be permitted to avoid its liability on the ground of a technical trespass.

The evidence relating to the Guyan Valley Oil Company's ownership of the equipment was sufficient to carry the case as to it to the jury.

So, under the circumstances, we reverse the judgment of the circuit court, re-instate the verdict of $1,000.00 against

the town of Corinne and enter judgment therein, and set aside the directed verdict for the Guyan Valley Oil Company, and award plaintiff a new trial as to it.

> *Judgment reversed; Verdict against town of Corinne re-instated and entered; New trial as to Guyan Valley Oil Company.*