## Cumberland River Oil Co. v. Dicken.

April 21, 1939.

As Modified on Denial of Rehearing Oct. 13, 1939.

J. S. Sandusky, Judge.

B. J. Bethurum and C. C. Gore for appellant.

J. G. Smith and J. A. Flowers for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This action was instituted in the Clinton Circuit Court by appellee, J. O. Dicken, Jr., through his next friend to recover damages for injuries received as the result of the explosion of a gasoline tank, or tanks (it does not clearly appear whether there was one or two), buried under the ground in front of the garage operated by the Albany Motor Company. The action was originally filed against the Albany Motor Company and the appellant, Cumberland River Oil Company. The latter owned the tank and pumps. The equipment had formerly been operated by the Albany Motor Company for the sale of gasoline but had been abandoned some months prior to the accident resulting in appellee's injuries. On the trial the jury found a verdict in favor of the defendant, Albany Motor Company, and against the appellant. It awarded appellee damages in the sum of $3,000, for which judgment was entered and this appeal followed.

There is a disagreement as to whether or not the gasoline pumps are located on the property of the Albany Motor Company or in the public highway. At all events, it appears that the pumps were located out in front of the garage where they would be accessible to automobiles using the street, and judging from the photographs filed in the record, in the line of the sidewalk, if there had been one. There was a pipe between the pumps which led down into the tank which was formerly used in filling it with gasoline. This pipe had a cap on it fastened by means of a quarter turn and, at one time, it could be locked. However, the lock had been broken off for a considerable period and, at the time of the accident, it was necessary simply to give the cap a turn to remove it from the pipe.

Children frequently played around the property of the church next door to the garage and, occasionally, in front of the garage itself. There is testimony to the effect that, prior to the accident, at least one child had removed the cap from the pipe and dropped pebbles into the tank. One of the proprietors of the Albany Motor Company testified that he had borrowed a suction pump and pumped the tanks dry at the time when they were abandoned. Apparently, no further attention was paid to the tank or pumps thereafter.

On the evening of June 5, 1937, just after supper, appellee, who was then six years old, procured some

matches at the home of his father across the street from the garage and dropped two lighted matches down the pipe into the abandoned tank. The only eye-witness who testified says that the child was blown into the air six or seven feet and landed on his back. The force of the explosion tore up the concrete for a space of several feet around the pumps and appellee was severely burned. According to the testimony of one of the doctors who treated him, he has lost approximately eighty per cent of the sight in one eye and will require a further operation on the other eye with a twenty-three per cent impairment of vision in that eye. The child was exhibited to the jury and his face is evidently considerably scarred but we are unable to determine the exact extent of these scars from the transcript of the evidence. He was at the hospital for about five weeks and was still receiving treatments at the time of the trial. There is no room for doubt, on the evidence presented, that the injuries are permanent.

It is argued for appellant (1) that the trial court should have sustained its motion for a peremptory instruction, (2) that the verdict is flagrantly against the evidence, (3) that the damages are excessive and the result of passion and prejudice, and (4) that the trial court made a prejudicial remark in the presence of the jury.

Appellant argues that this is not a case involving the so-called "attractive nuisance" doctrine. In substance, its argument is that since appellee was a trespasser it is immaterial that he was an infant of tender years and he must take the premises as he found them. Young's Administrator v. Mahan-Jellico Coal Company, 252 Ky. 316, 67 S. W. (2d) 42. The extent of its duty therefore, says appellant, was to refrain from willfully injuring appellee after discovering his presence. We conceive this to be a misconception of the doctrine. As said in Louisville & Nashville Railroad Company v. Hinton, 220 Ky. 277, 295 S. W. 175, 176, 53 A. L. R. 1328, "The doctrine is never applicable except where the plaintiff is a trespasser." It has its genesis in the decision of Lord Denman in Lynch v. Nurdin, 1 Q. B. 29, 41 E. C. L. 422. The defendant in that case negligently left his horse and cart unattended in a public street. The plaintiff, a child of six, climbed on the cart to play, and while getting down from it another boy made the horse move, in consequence of which the plaintiff fell,

and his leg was broken. It was held that the defendant was liable even though the plaintiff was a trespasser on the cart and his own trespass contributed to his injury, and it was ruled to be a question for the jury whether or not the defendant was negligent. It will be observed that the only effect given to the tender years of the plaintiff in Lynch v. Nurdin was to excuse his glaring contributory negligence and trespass. Buddy v. Union Terminal Railroad Company, 276 Mo. 276, 207 S. W. 821. The doctrine migrated to this country in the case of Sioux City & P. Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, and in at least some jurisdictions it has been limited strictly to meet the defense of contributory negligence and not as a foundation for liability of the defendant. Hight v. American Bakery Company, 168 Mo. App. 431, 151 S. W. 776. As applied in Kentucky, the rule has been broadened to the extent that a defendant has an added duty placed upon him in certain circumstances. Thus in Lyttle, Administrator, v. Harlan Town Coal Company, 167 Ky. 345, 180 S. W. 519, 521, we said:

> "If a person, on his own premises, has an exposed place that is attractive to and at the same time dangerous for use by children, and he knowingly permits them without objection or warning to congregate or play about it, he must keep it in reasonably safe condition for the use to which children of tender years will put it. Bransom's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193; Union Pacific Railroad Company v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434. This principle has been engrafted into the law as a humane exception to the general rule that the owner of premises is under no duty to make them safe for the use of trespassers or ordinary licensees."

It appears from the evidence that the proprietors of the Albany Motor Company, had on occasions, warned children against playing in or about the garage although it does not appear that appellee was directly cautioned, with reference to the particular instrumentality of the intake pipe guarding the danger to which the infant plaintiff became exposed through his childish instinct, even if such a warning to a child of his age and degree of appreciation would ipso facto be effective to relieve appellant of liability, notwithstanding plaintiff was incapable of appreciating the warning. We do not

think that a warning, even if it had been specific, would protect appellant from liability in the circumstances, unless plaintiff was capable of appreciating and applying it. The court so instructed the jury and we think correctly so, and of which appellant's counsel made no complaint on this appeal. It is also insisted that there was nothing attractive to children about the gasoline pumps or intake pipe, and that children were attracted by the broad, smooth sidewalk around the church next door and not by the garage or pumps. Swartwood's Guardian v. Louisville & Nashville Railroad Company, 129 Ky. 247, 111 S. W. 305, 33 Ky. Law Rep. 785, 19 L. R. A., N. S., 1112, 130 Am. St. Rep. 465. The evidence shows however that children played about the pumps and the fact of attraction is demonstrated by the circumstances before us. But aside from the question of attractive nuisance, the case is very like Sedita v. Steinberg, 105 Conn. 1, 134 A. 243, 49 A. L. R. 154. In that case, a nine-year-old boy fired a "bing-bang" toy pistol, which produced a loud noise and a flash from the end of the barrel, down the intake of an abandoned underground gasoline tank. It there appeared that the tank was on the premises of the defendants under concrete which presented a uniform surface to the public sidewalk unobstructed by a fence or other structure. It was held in that case that the plaintiff was not a trespasser on the premises of the defendant, but was like any other traveler along the street who would not be required under the circumstances to take notice of the property line. The court, therefore, did not deem it necessary to consider the "attractive nuisance" doctrine and determined simply that the question whether the defendant had exercised due care in guarding the intake should have been submitted to the jury. See, also, Bryant v. Guyan Valley Oil Company, 111 W. Va. 662, 163 S. E. 773.

Whether we follow the Connecticut Court and hold that under the circumstances presented here, which are even stronger than those in Sedita v. Steinberg, supra, that the plaintiff was not a trespasser, or whether we apply the "attractive nuisance" doctrine as announced in Lynch v. Nurdin by Lord Denman, it seems plain that the alleged trespass and contributory negligence of the plaintiff must be eliminated from consideration. Indeed, it is not insisted here that plaintiff was of sufficient age or mentality to be chargeable with contributory neg-

ligence. We are left simply with the question of the defendant's negligence.

It appears without dispute that the pumps and tank in question were located in close proximity to the public highway, if not on it. It further appears that members of the public were frequently on or about the premises. There was evidence to the effect that the cap on the intake pipe had at one time been locked but that the lock had been broken for a long time prior to the accident. There was also evidence tending to show that the defendants—including appellant—knew, or should have known, of this condition. If these facts were true, and we see no reason for disbelieving them, the question of whether or not appellant exercised ordinary care was preeminently for the jury. The court could not say as a matter of law that it was or was not due care. It is insisted that the tank was pumped dry, but there was also evidence from another child who dropped a pebble down the intake that he heard it splash, thus indicating that some liquid remained in the tank. Furthermore, it is almost a matter of common knowledge that gasoline fumes would remain in the tank for months even after the gasoline itself had been removed. These were all matters for the consideration of the jury in determining whether or not appellant exercised ordinary care to guard the instrumentality and the court did not err in refusing a peremptory instruction, nor can we say that the verdict is flagrantly against the evidence.

It is claimed by appellant that the verdict is excessive and results from passion and prejudice of the jury. There can be no question of the great pain that must have been suffered by appellee, to say nothing of the nervous shock. His hospital, medical, and other expenses amounted to approximately $1,000. His face has been disfigured and he has practically lost the sight of one eye, and his vision from the other has been seriously impaired. We are not prepared to say that the verdict of $3,000 is excessive. The fact that the jury found a verdict against appellant and not against the Albany Motor Company does not indicate to us that the verdict is the result of prejudice against the appellant. The Albany Motor Company had abandoned the use of the pumps. They were the property of appellant and it was appellant who had control of them and the right and duty to put a proper lock on the intake pipe. We would be inclined to find the same verdict that the jury did.

Finally, it is insisted that the trial court made a remark which was highly prejudicial to the appellant. A witness who had assisted in pumping the gasoline out of the tank was asked on cross-examination whether or not the bottom of the tank was level, apparently with the idea of showing that the pump had not sucked out all the gasoline. Counsel for appellant remarked that there was no proof that there was any gas in the tank and objected to the question, to which the court responded: "If there wasn't any gas, how did it explode?" We see nothing prejudicial in this remark. It was not contended that the tank did not explode and the substance which caused the explosion was not claimed by anyone to have been anything other than gasoline fumes. The question for the jury to determine was whether or not the defendant exercised ordinary care, and not whether or not there was an explosion and whether or not it was gasoline that exploded. The question was a natural one and it was not calculated to influence the decision of the jury improperly.

Judgment affirmed.