HANLON, JUDGE:
Claimant alleges that on January 25,1987, she was traveling on snow covered State *165 Route 85 between Madison and Van in Boone County when her Fiat struck holes in the road, left the highway, and landed in the waters of Pond Fork. Claimant testified that she was traveling approximately 27 miles per hour on Route 85, when she encountered the holes near the Quinlon-Robinson boundary line. She explained that she had driven Route 85 daily for the past three years. Although she testified that the road was full of holes that she had previously seen, the record does not indicate that she notified respondent of the condition. On the morning before her 2:00 p.m. accident, claimant testified hat she had seen many potholes. Although in route to work at the Boone County Jail, with close proximity to law enforcement officers and other government workers, the record does not indicate that claimant had previously informed any responsible party of the conditions existing on State Route 85.
Claimant further alleges that the respondent failed to post guard rails in the accident area which could have stopped claimant’s vehicle from going over the bank and landing in the river.
A witness for the claimant, Loretta Petry, whose residence overlooks Route 85, testified that on the date of the accident traffic on the road appeared to be “creeping” along in the snow. When asked by the Court to define creeping, the witness, Mrs. Petry, explained, “going very, very slowly.” In terms of miles per hour, Mrs. Petry said, “probably about 10 miles per hour.” A second witness for the claimant, Mr. Petry, testified that there was six inches of snow on the road in the area of the accident and twelve inches on the road edge. When asked what caused claimant to lose control of her vehicle, the snow, or the hole(s) in the road, claimant alleged the potholes in the road. Neither claimant nor her witnesses could describe the holes with particularity. Mrs. Petry was asked whether she had contacted respondent to complain about holes in the road, whereupon she answered, “Well, I guess it’s like the weather. You complain but you really don’t do anything about it. You complain to someone, you know, a friend or neighbor, but you really don’t, you know, contact the Department of Highways.” (Emphasis added).
Respondent denies liability contending that it had no notice of the particular hazard complained i.e., the holes in the road. Respondent additionally avers that it was not reasonable and customary to have guard rails in an area of road that was level and low. Both respondent and claimant agree that there had been a snowfall in the area and that State Route 85 was covered with snow.
The State is neither an insurer nor a guarantor of safety of persons traveling on its highways. Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947). For the respondent to be held liable for damage caused by the hole, it must have had either actual or constructive notice of the defect and a reasonable amount of time to take suitable corrective action. Davis v. Dept. of Highways, 11 Ct. Cl. 150 (1977). As the claimant did not establish notice, and the accident may have resulted from causes other than the road condition, the Court cannot hold respondent liable. It appears to the Court that the admitted speed of travel of claimant was excessive for the road conditions then and there existing. It is further the opinion of the Court that the absence of a guard rail does not in and of itself establish negligence. The West Virginia Supreme Court of *166 Appeals established this rule in Adkins when it stated, “We do not think the failure of the state road commission to provide guard rails.. .constitutes negligence of any character, and particularly no such negligence as would create a moral obligation of the State to pay damages for injury or death assumed to have occurred through such failure, and as the proximate cause thereof. ” The Supreme Court reasoned that the financial limitations placed upon the highway commissioner made it impossible to take care of all defects or inadequacies of the road system, at one time, or even in one year. The Court concluded, “In the very nature of things, the road commissioner must be permitted a discretion as to where the public money, entrusted to him for road purposes, should be expended, and at what points guard rails, danger signals and center lines should be provided, and the honest exercise of that discretion cannot be negligence.” (Emphasis added). For the reasons stated hereinabove, the Court is of the opinion to and does deny this claim.
Claim disallowed.