PER CURIAM:
Claimants brought this action for damages related to an incident that occurred when 8 year old Andrea Depta (hereafter referred to as Andrea) fell off a bridge over Buffalo Creek near Kistler in Logan County. The bridge is maintained by respondent. The Court is of the opinion to make an award in this claim for the reasons more fully stated below.
The incident giving rise to this claim occurred on August 25, 2001. Claimant Andrea Depta, who had celebrated her 8th birthday about a month before the time of the accident, was standing on her bicycle on the bridge over Buffalo Creek looking for catfish. The bridge involved in this incident is a 15 feet wide, concrete, pre-fabricated bridge that is 45 feet long. The bridge had a curb that was five inches high and about six inches wide, but it had no guard rails. Andrea had been riding her bicycle with her friend, John Toler, also on his own bicycle, for a couple of hours when they decided to look for catfish in Buffalo Creek. She testified that she had previously looked for catfish in the creek while standing on the bridge, despite warnings from her parents to stay off the bridge. Her parents had warned her to stay off the bridge because there were no guard rails. Andrea testified that she was standing astride her bicycle with her foot on the curb looking over the edge when her foot slipped and she fell over the edge. Andrea fell about 10 or 11 feet and landed on a rocky area at the si de of the creek. She attempted to break *220 her fall with her hands. As a result of the fall, she sustained two fractured wrists and lacerations to her forehead. She blacked out for a short period of time but then got up and started walking back to her home. John Toler ran to get help and was able to get his mother. Ms. Toler discovered Andrea walking up the street bleeding freely from her head. Ms. Toler got a cloth to put on her head and then walked Andrea to her parents’ house. Gary Depta, Andrea’s father, called for an ambulance and then proceeded to put her in his truck to take her to the hospital. On the way to the hospital, they were able to flag down the ambulance which then took Andrea to Logan General Hospital. She was then transferred to Charleston Area Medical Center where the wounds on her head were treated and both broken wrists were set. Claimant incurred over $9,800.00 in medical bills which were covered by Medicaid. Claimant seeks compensation for pain and suffering, mental anguish, and future medical expenses for cosmetic surgery on the scars that remain on Andrea’s forehead.
Gary Depta, Andrea’s father, testified that at the time of the accident he had been sitting in his home. Mr. Depta stated that the bridge had been installed about 12 years before the incident and that it had never had guard rails on it. He testified that he had told Andrea every day that she should not go onto the bridge because there were no guard rails on it and it was not safe for her to be there. He also stated that he had previously found her on the bridge despite his warnings and had punished her for this. Mr. Depta said that he had contacted respondent on several occasions before the accident to inquire about putting guard rails on the bridge, since this was the only access across Buffalo Creek to Route 16 for the residents in the area where the Depta’s lived. This was also the only way the children in the area could get to their bus stop. He stated that after the accident Andrea had been in a lot of pain the entire time he was with her. He rode in the ambulance with her from Logan General Hospital to Charleston Area Medical Center. He testified that Andrea had surgery performed on her head the next morning followed by surgery to set her wrists. She was finally released from the hospital later in that day. Mr. Depta testified that Andrea could not do anything when she got home as both her amis were in casts. He and the rest of the family had to help Andrea do just about everything. He stated that because of her injuries, she missed six or seven weeks of school and that they had to bring in a home tutor to help her complete the school work she was missing. Mr. Depta testified that she had the cast on her left wrist for about five weeks and the cast on her right wrist, which was more severely broken, about two or three more weeks.
Sherry Depta, Andrea’s mother, testified that when the bridge had first been put in place about 12 years ago, she had called the Logan Department of Highways to inform them that this was an area where children had to cross the bridge everyday to get to their bus stop. She also informed respondent that children play near this bridge all the time and for these reasons there should be guard rails on the bridge. Mrs. Depta was told on that occasion and on subsequent occasions when she called about the need for guard rails that the guard rails were not installed so that mobile homes could be moved in and out of the area. She testified that she made at least six or seven telephone calls to respondent about the need for guard rails before her daughter’s accident. Mrs. Depta stated that on the date of the accident, she had taken her son to the local Daily Queen and then on to her grandmother’s house. When she got to her grandmother’s, she was told to go home because there had been an accident. She arri ved home just as Mr. Depta was preparing *221 to take Andrea to the hospital. They then put her into Mrs. Depta’s vehicle and drove her until they were able to flag down the ambulance, which took her the rest of the way to the hospital. Mrs. Depta testified that while at the hospital, the doctors had given Andrea a local anesthesia while they put stitches in the wounds on her forehead but she had to be under general anesthesia when they set her wrists. After they got Andrea home, they had to help her do everything including feeding her, to dress her and to take her to the bathroom. Mrs. Depta testified that it was about a year before Andrea was fully recovered from her injuries, though she still favors her wrists when she trips and she sometimes complains of her wrists being sore if she writes for too long. Mrs. Depta also stated that her daughter has had dreams about falling off a bridge after the incident and that she now does not like high places.
Danielle Depta, Andrea’s older sister, testified that she had taken Andrea across the bridge on numerous occasions. She further testified that their parents had told them on a regular basis that the bridge was not safe. She also stated that on previous occasions she had seen Andrea on the bridge and had told her that she should not be there.
The position of the claimant is that respondent was negligent by failing to properly maintain the bridge and by failing to properly install guard rails, and that as a direct and proximate result of the negligent acts of respondent claimant fell from the bridge and suffered damages.
The position of the respondent is that no action or failure to act on its part caused the claimant’s injuries or the incident that led to those injuries. Upon the completion of claimant’s case, respondent made a motion to dismiss based upon Adkins vs. Sims, 130 W.Va. 645; 46 S.E.2d 81 (1947), in that there had never been any guard rails at this location and this should be left to the discretion of the State Road Commissioner. Respondent also based its motion to dismiss on the fact that there had been no expert testimony presented by the claimant to show that the accident would not have happened if a guard rail had been in place. Further, respondent argued that the rebuttable presumption that a 7 to 14 year old is incapable of negligence established in Pino vs. Szuch, 185 W. Va. 476; 408 S.E.2d 55 (1991), had been met and Andrea should be found to be negligent in her actions that led to her falling from the bridge. The motion to dismiss was taken under advisement.
Terry Ellis, a transportation crew chief for the respondent in Logan County, testified that the bridge in question, which is just off Route 16 in Logan Comity, was installed in 1990 or 1992. He testified that he had received no complaints concerning any problems with this bridge prior to claimant’s accident. Mr. Ellis found out about the accident a couple of days later. He also talked to Mrs. Depta several days after the accident about there being no guard rails on the bridge. Mr. Ellis maintained that he had received no notice of any problems or complaints about the bridge prior to the claimant’s accident.
Curley Belcher, County Supervisor for the respondent in Logan County, testified that he had no knowledge of any complaints about this bridge prior to the date of the claimant’s accident. Mr. Belcher stated that he found out that someone had fallen from the bridge at some point after claimant’s accident, but that he had heard nothing else in regal'd to the bridge in question prior to that. He stated this bridge was the newest bridge that he was aware of that does not have guard rails. Mr. Belcher stated that for bridges *222 installed from around 1990 to the present, the bridge involved in this claim is the only one that he knows of that does not have any guard rails.
The well-established principle of law in W est Virginia is that the State is neither an insurer nor a guarantor of the safety of travelers upon its roads. Adkins vs. Sims, 130 W.Va. 645; 46 S.E.2d 81 (1947). In order to hold respondent liable for road defects of this type, a claimant must prove that respondent had actual or constructive notice of the defect and a reasonable time to take corrective action. Chapman vs. Dept. of Highways, 16 Ct. Cl. 103 (1986). Tobe actionable, respondent’s negligence must be the proximate cause of tire claimant’s injuries. Roush vs. Johnson, 139 W.Va. 607; 80 S.E.2d 857 (1954). One requisite of proximate cause is the doing of an act or the failure to do an act that a person of ordinary prudence could foresee may naturally or probably produce injury to or the death of another. The second requisite of proximate causation is that such act or omission did in fact produce the injury or death. Matthews vs. Cumberland & Allegheny Gas Co., 138 W.Va. 639; 77 S.E.2d 180 (1953). For a child between the ages of 7 and 14, there is a rebuttable presumption that the child is incapable of negligence; the burden is upon the party attempting to overcome the presumption to prove that the child has the capacity to be contributorily negligent. Pino vs. Szuch, 185 W. Va. 476; 408 S.E.2d 55 (1991).
This claim involves an eight year old child who slipped and fell from a bridge. As established in Pino vs. Szuch, there is a rebuttable presumption that a child between the ages of 7 and 14 is incapable of negligence. The burden lies upon the party that is attempting to overcome the presumption to prove by a preponderance of the evidence that the child had the capacity to be contributorily negligent. In this matter, respondent has made a motion to dismiss, based partly on the assertion that this burden has been met and Andrea should be held contributorily negligent. However, this Court finds that this burden has not been met and Andrea cannot be found contributorily negligent. In Pino vs. Szuch, the Supreme Court of Appeals established the standard to be followed holding that a child under the age of 7 is incapable of negligence, a child between the ages of 7 and 14 is presumed incapable of negligence, and a child over 14 is presumed to be capable of being negligent. The Supreme Court of Appeals went on to state that “[i]n order to rebut the presumption that a child between the ages of 7 and 14 lacks the capacity to be negligent, evidence of the child’s intelligence, maturity, experience, and judgmental capacity must be presented... It is also permissible to show that the child had been recently warned of the dangers associated with the activity that gave rise to his injury.” Id. at 477, Syllabus 4. The Supreme Court of Appeals also stated that “[a] party is not entitled to rebut the presumption that a child between the ages of 7 and 14 is incapable of negligence with a binding instruction which focuses only on two factors, i.e., whether the child has been warned of the danger that caused his injury and whether the child was of sufficient intelligence to understand the danger.” Id. at 477, Syllabus 4. The Supreme Court of Appeals farther stated “there is no doubt, as the Pennsylvania court said in Berman vs. Philadelphia Board of Education, 310 Pa.Super153; 456 A.2d 543 (1983), that the presumption grows weaker as the fourteenth year grows closer.” Id. at 479. In the instant case, there was substantial evidence that Andrea had been warned repeatedly of the dangerous condition of the bridge by her parents. There was also evidence presented that Andrea was a good student in school both before and after the accident. This however, was the limit of the evidence presented to rebut the presumption *223 that Andrea, as an eight year old, was incapable of negligence. Further, Andrea had turned eight years old about one month before this accident. As in Pino, if the presumption grows weaker as the fourteenth year grows closer, it can also be said that the presumption is stronger the closer the child is to the age of seven. Based upon the fact that Andrea was only 13 months removed from her seventh birthday, along with only the evidence that she had been warned of the danger and her intelligence, this Court finds that the rebuttable presumption that Andrea was incapable of negligence was not met; therefore she cannot be found guilty of contributorily negligence.
Regarding respondent’s Motion to Dismiss based upon Adkins vs. Sims, this Court is not unmindful of it’s previous decisions based upon Adkins. The Adkins Court stated:
“[w]e do not think the failure of the state road commissioner to provide guard rails . . . constitutes negligence of any character, and particularly no such negligence as would create a moral obligation on the part of the State to pay damages for injury ... assumed to have occurred through such failure, and as the proximate cause thereof. The very nature of the obligation of the State, in respect to the construction and maintenance of its highways, precludes the idea that its failure to exercise discretion in favor of a particular location over another, on whether it should provide guard rails ... at that point, is an act of negligence. Certainly, it must be known, as a matter of common information, that places of danger on our highways exist at innumerable points, particularly on secondary roads. ... In the veiy nature of things, the road commissioner must be permitted a discretion as to where the public money, entrusted to him for road purposes, should be expended, and at what points guardrails... should be provided, and the honest exercise of that discretion cannot be negligence.. .. Certainly, where the road commissioner is vested with discretion in matters of this character, it cannot be negligence that he selects for safety measures one point over another_” Adkins v Sims, 130 W.Va. at 660,661; 46 S.E.2d at 88, 89.
Based upon Adkins, this Court has previously ruled that respondent was not liable in a case where there was never guard rails on a bridge. Springer vs. Division of Highways, 24 Ct. Cl. 42. In Blevins vs. Division of Highways, 18 Ct. Cl. 164, this Court stated that “the absence of a guard rail does not in and of itself establish negligence.” Id. at 165.
In the instant case however, the Court is of the opinion that respondent had at least constructive knowledge that installing and maintaining this bridge without guard rails was a hazard to the public. Evidence adduced at trial proved that Sherry Depta had telephoned respondent after the bridge was installed to inform them of the fact that the children in the neighborhood had to cross over this bridge every day during the school year to get to their school bus stop and then back to their homes. Mrs. Depta also informed respondent that the area in and around the bridge was one where the children frequently played. Mr. and Mrs. Depta made numerous other telephone calls to the respondent regarding this over the years. It was also established that this was the only way in and out of their neighborhood, with Route 16 just on the other side of this bridge. This bridge had replaced the only other way out of the area, thereby becoming the only *224 access to Route 16. The children that lived in the neighborhood had no other way to get to their school bus stop. While respondent is correct in asserting that Adkins leaves it to its own discretion where to place guard rails, this Court finds that the failure to place guard rails on this particular bridge, where it was made known soon after the bridge was installed that this was an area where children frequently had no choice but to be, was negligent.
Further, the Court, after considering that children frequently walked across and played on this bridge, finds that the bridge is a dangerous instrumentality. In Sutton v. Monongahela Power Co., 151 W.Va. 961; 158 S.E.2d 98 (1967), the Supreme Court of Appeals stated that though this State does not recognize the doctrine of attractive - nuisance, there is a similar rule for children:
“Although the Attractive Nuisance Doctrine is not recognized in this State, this Court has adopted a rule quite similar to that doctrine and has held that where a dangerous instrumentality or condition exists at aplace frequented by children who thereby suffer injury, the parties responsible for such dangerous condition may be held liable for such injury if they knew, or should have known, of the dangerous condition and that children frequented the dangerous premises either for pleasure or out of curiosity.”
Id., at 971. The respondent knew that there were no guard rails on the bridge and was notified on several occasions that there were children frequently in the area of the bridge, therefore, this Court finds that the bridge was in fact a dangerous instrumentality, and therefore may be held liable for the injury sustained by the claimant.
Based upon the knowledge that children were often around and on the bridge, the claimant meets the first requisite of proximate cause where a failure to do an act that a person of ordinary prudence could foresee may naturally or probably produce injury to or the death of another. Respondent was made aware of the fact that children would be on this bridge either walking or playing. A person of ordinary prudence could foresee that children while playing on a bridge with no guard rails could in fact fall off while peering over the edge or even just walking too close to the edge. This in fact did happen when Andrea fell over the side of the bridge while looking over the edge for catfish. The Court finds that this accident was the result of respondent failing to place guard rails on the bridge, thus meeting the second requisite of proximate causation.
For the reasons stated above, the Court denies respondent’s Motion to Dismiss. The Court is also of the opinion that respondent is liable for the damages which proximately flow from its inadequate protection of the traveling public in this location, and further, that respondent is liable for damages to claimants in this claim. However, it should be noted that claimants have claimed, in part, future medical expenses. In claimants’ case in chief there was no evidence which established what Andrea’s future medical expenses may be. No future medical expenses being proved in this case, the damages awarded in this claim do not include future medical expenses.
The Court, in making an award to Andrea, shall make the award to Gary Depta, Andrea’s father and next friend, as her guardian. Accordingly, he must qualify as her guardian, and be bonded, and otherwise comply with West Virginia Code §§ 44-10-5 and 44-10-7.
*225 In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to the claimant Andrea Depta in this claim in the amount of $36,000.00.
Award of $36,000.00.